
DA 09-0439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 113

JOYCE COOPER,

      Plaintiff and Appellant,

v.

PETER D. HANSON, M.D.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 2007-951
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Erik B. Thueson, Thueson Law Office, Helena, Montana

            James T. Towe, Towe Law Offices, Missoula, Montana

      For Appellee:

            J. Daniel Hoven, Carlo J. Canty, Browning, Kaleczyc, Berry
& Hoven, P.C., Helena, Montana

Submitted on Briefs:  March 31, 2010

Decided:  May 25, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Joyce Cooper (Cooper) appeals from a jury verdict in the First Judicial District Court finding that defendant Peter D. Hanson, M.D. (Dr. Hanson) was not negligent in his treatment and care of Cooper. Cooper argues that her right to a fair and impartial trial was prejudiced in the course of the proceedings below, and that her motion for a new trial was improperly denied by the District Court. For the reasons set forth below, we reverse the verdict of the jury and remand this matter to the District Court for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Cooper had been suffering from arthritis in her left knee, and conservative treatment measures had failed to alleviate the condition. On December 1, 2005, Dr. Hanson performed a total knee arthoplasty surgery (TKA) on Cooper's left knee. During surgery, complications arose due to damage to the popliteal artery in Cooper's left knee. Cooper alleged that she suffered various permanent injuries to vessels and nerves in her left leg as a result of the complications.

¶3 On December 7, 2007, Cooper filed a negligence action against Dr. Hanson in the First Judicial District Court. Cooper alleged that Dr. Hanson was negligent in his use and placement of surgical tools during the operation, and that he was responsible for severing the popliteal artery in her left leg. Dr. Hanson denied he was negligent.

¶4 Prior to trial, Cooper sought a motion in limine to prohibit defense counsel from presenting improper argument to the jury on the following:

> 1. That the defendant could or would be financially affected by any adverse verdict;

2

2.     That the defendant could face consequences concerning the right to practice medicine, continuing licensure, hospital privileges, or loss of limitation of business;
3.     That the defendant may be forced to close or limit his services;
4.     That the defendant could have his professional reputation or standing damaged;
5.     That the defendant needs special protection or that there could be unspecified effects or consequences of the malpractice claims, this trial, or medical malpractice verdicts against a doctor;
6.     That the jury should put itself in the shoes of the defendant or analyze the case and its potential consequences from the defendant's perspective;
7.     That the defendant feels bad or similar comments.

¶5     The District Court denied the motion, concluding that the request to exclude these arguments was "vague and overbroad." Counsel for Dr. Hanson, Daniel Hoven (Hoven), expressed offense at the suggestion that he would violate the Rules of Evidence, and assured the court that he would not engage in improper argument. The District Court noted that counsel for both parties should be "fully aware of their ethical obligations and what is proper argument at trial," and further noted that any issues related to the above-mentioned arguments should be dealt with by a proper objection at trial.

¶6     Jury selection began on April 20, 2009. During voir dire, Cooper elicited responses from several jurors on the topic of the plaintiff's burden of proof in a civil medical malpractice case. For instance, in response to a question about whether any members of the panel would require proof greater than the preponderance of the evidence in a medical malpractice case, juror Chris Silvonen (Juror Silvonen) stated the following:

A.     In this particular matter, I would. I think that for the very little I know about it, if we were to say he was in the wrong, it could be career damaging. I think all those things—I don't know. I'm—I know very little about what's going on at this point, but it's almost like a criminal sentence

3

for a doctor that's got a malpractice, you know, type of deal. So I would like to see quite a bit of proof.

Q. More than just—
A. More than just a little bit.
Q. You're pretty strong on that?
A. Yes.
Q. Pretty hard to change? Hard for me to change your mind?
A. Seems like a life sentence to a medical doctor.

¶7 Another member of the panel, Frederick Demato, also stated that he was "against preponderance of the evidence" in this type of case.[1] Other jurors expressed similar sentiments implying that the preponderance of the evidence standard would be insufficient in a medical malpractice case. In exploring this issue with the jury, Cooper's trial counsel Erik Thueson (Thueson) had the following exchange with Juror Wayne Waters:

A. Well, without knowing the facts, I can't say that, but it would have to be a preponderance of the evidence.
Q. Okay. So you could go 51/49?
A. Nope.
Q. Well if this were a basketball game, how much would Joyce have to win the basketball game in your mind before you have enough doubts set aside?
A. Let's say it would have to go a lot more than 51 percent.

¶8 Thueson also questioned Waters about his feelings on awards for pain and suffering. Waters indicated that he could not make such an award unless there was "a deliberate act or deliberate negligence on the part of the doctor." When questioned further, however, Waters also agreed that he could award such damages if it was shown that a doctor made a mistake that was below the standard of care, but unintentional.

---

[1] Unlike the other members of the panel discussed in this Opinion, Demato was ultimately not selected to serve on the jury.

¶9 Thueson also questioned Juror Richard Ellwein about his ability to award damages for pain and suffering if proven at trial. On this point, the following exchange occurred:

> Q. Okay. Mr. Ellwein?
> A. I believe I want to hear what the facts are and make a determination on the whole picture.
> Q. You could award—
> A. I could award damages, but I'm not going to discuss any amounts or anything like that. I will not go into detail about any amounts or anything like that. The cause of it—if we deem it necessary, we'll—I'll figure that out when I make a decision on that.
> Q. Well—I mean, so you don't have a problem with the concept?
> A. No.
> Q. If the evidence shows, you could award two or three hundred thousand?
> A. I said, sir, don't mention an amount. I won't—I'll just say—I'll just say that what the—whatever the instructions are, I'll base it on the instructions.

¶10 In response to Thueson's examination, Juror Dave Miller indicated that there should be a greater burden of proof in a medical malpractice case. When asked by Thueson if he could be convinced of anything different in the next couple of days, he answered "No." When questioned, Juror Michael Eby stated that he "would need a lot more proof . . . beyond a reasonable doubt to decide," and further indicated that he "would need a lot more than, say, 75 percent to decide one way or the other."

¶11 During this questioning, some members of the jury panel expressed uncertainty about what burden of proof is legally required since none of the potential jurors had actually been instructed by the court on this issue. Sensing the jury's confusion on this point, the District Court interjected and reminded Thueson that there were no assigned percentages to a preponderance, and told counsel that he was confusing the court and jury pool. Shortly thereafter, Thueson then went on to explore other topics with the jury.

5

¶12 During a break and outside the presence of the jury panel, Thueson raised concerns with the court that many panel members had indicated their inability to apply the preponderance of the evidence standard in a civil malpractice case. Counsel indicated his belief that if a juror demonstrated such a bias, he or she should be excused for cause. Defense counsel responded that Thueson was confusing the jury and that, in any event, defense counsel should be given the opportunity to rehabilitate any jurors who were challenged for cause. The District Court reiterated its concerns that Thueson's discussion of the burden of proof was confusing the jury, and allowed Thueson to read to the jurors the pattern jury instruction on the preponderance of the evidence standard in order to clarify the issue.

¶13 Thueson continued to examine the jury panel after the break and discussion in chambers. He challenged several potential jurors for cause on grounds not related to the burden of proof question, and the District Court granted some of those challenges. Thueson then returned to examining Juror Waters and questioned him about his ability to be fair in a medical malpractice case. Waters, whose job required him to decide disability determinations on a regular basis, indicated that he could be fair, but wanted to "know the evidence and see the medical evidence." Thueson questioned whether "malpractice information" would creep into his decision-making process regarding a doctor's liability, to which Waters responded "If he's not doing his job, then—but I don't know that at this point." When pressed further if he would require a high burden of proof in a medical malpractice case, Waters responded "Doctors can make mistakes like anybody else." Thueson then challenged Waters for cause. Hoven was given the

opportunity to examine Waters, who stated that he would not be biased in judging the evidence presented to him. The District Court subsequently denied Thueson's challenge for cause.

¶14 Voir dire continued. However, Jurors Silvonen and Eby were not specifically challenged for cause based on their inability to apply the preponderance of the evidence standard, or their general bias in a medical malpractice suit. As Thueson had been instructed by the District Court to finish his examination before a noon-hour lunch break, Thueson stopped his examination and thanked the jury for their time. Thueson did not expressly inform the District Court at this time that he was passing the jury for cause, although he did conclude his examination.

¶15 After the lunch break, but before the jury panel was reconvened, Thueson specifically challenged jurors Silvonen, Eby, and Ellwein for cause, arguing that these three jurors were unable or unwilling to apply the preponderance of the evidence standard to the case. Thueson also reminded the court of Silvonen's statement that a malpractice verdict was like a "life sentence" to a doctor. Hoven objected, claiming that Thueson had already passed the jury for cause prior to lunch. Thueson stated that he had not passed the jury for cause before lunch, but finished his questioning solely because the District Court wanted him to conclude his voir dire by noon. At the same time, Thueson conceded that Hoven was probably "technically right" on this point, but nonetheless requested an opportunity to make a record of his challenges to these jurors. With respect to Silvonen, the District Court denied the challenge for cause on the grounds that Silvonen had been questioned after his initial statements and indicated he could be fair.

7

With respect to Juror Eby, the District Court denied this challenge on similar grounds, noting that there was significant discussion about the preponderance of the evidence standard after his initial statements. Finally, with respect to Juror Ellwein, the District Court denied that challenge as well, agreeing with Hoven's claim that Ellwein did not demonstrate a bias, but rather simply resisted attempts to assign a monetary figure to pain and suffering damages without seeing or hearing any evidence.

¶16 Cooper used her preemptory challenges for jurors Waters and Ellwein and two other potential jurors, but Eby and Silvonen served on the jury. Trial then commenced. During the trial, both sides presented expert and lay testimony on various aspects of the case, and the court received numerous exhibits into evidence. During his closing statements, Thueson presented the jury with some information about his personal biography, and how he became a trial lawyer. In this connection, he stated:

> And I didn't go the route that Dan [Hoven] went. I didn't want to represent companies, businesses, corporations. I wanted to represent individuals. People. And I'm proud of that.

¶17 Later, during Hoven's closing statement, he made the following statement to the jury:

> And when Mr. Thueson suggested that I represent companies and corporations, I represent Pete Hanson. A person. Dr. Hanson is just as entitled to justice in this courtroom as Ms. Cooper. He's a person. He's a member of this community.
> He didn't even have to come back here. He could have stayed in Akron. We're lucky to have him. We're lucky to have a trained orthopedic surgeon.
> MR. THUESON: May I? I think there's a case called Wellcome [sic]. I would make an objection on the Wellcome case, Your Honor.
> THE COURT: Overruled.

8

¶18 Then, at the end of his closing statement, Hoven stated the following:

> So it's been kind of a long week. And when you do these trials, I feel like I know some of you people now. And we'll probably see each other on the street someday.
> But I want to make sure you guys are proud of your verdict. And I don't think putting a black mark on Dr. Hanson in this case is going to make you proud.

Cooper did not object or ask the court to admonish the jury or counsel at the time this statement was made.

¶19 After roughly one hour, the jury returned a defense verdict, finding that Dr. Hanson was not negligent in his treatment of Cooper. After the jury was dismissed, Cooper made a record in support of a motion for a new trial. Cooper argued that counsel for Dr. Hanson made several improper comments to the jury during closing statements. Cooper objected to comments that the jury should consider the effect of its verdict on Dr. Hanson's reputation, in particular to the fact that it would put a "black mark" on him. Cooper pointed out that she sought to prohibit such argument in her motion in limine, and noted that the timing of the comments put her in a difficult position. Cooper argued that this was an appeal to passion and prejudice which should not have been permitted.

¶20 Cooper subsequently filed a written motion for a new trial, arguing in part that the bias of the jury, the District Court's failure to grant her challenges for cause, and improper arguments by Dr. Hanson during closing, prejudiced her right to a fair trial. The District Court denied the motion in a written order dated July 10, 2009. The District Court noted that § 25-11-102, MCA, provides that a verdict may be vacated, and a new trial granted, upon:

the application of the party aggrieved for any of the following causes materially affecting the substantial rights of the party:

     (1)  irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;

.  .  .

     (3)  accident or surprise which ordinary prudence could not have guarded against;

.  .  .

     (7)  error in law occurring at the trial and excepted to by the party making the application.

¶21    Addressing Cooper's argument concerning jury bias and the denial of challenges for cause, the District Court noted that Thueson's voir dire of the jury had continued beyond its allotted time, and reiterated its view that Thueson was confusing the jury and trying to get them to commit to positions before they had heard any evidence.

¶22    After reviewing the transcript, the District Court concluded that the challenge to Juror Waters was properly denied and that he did not express an unqualified belief as to the merits of the case, nor did he exhibit a bias in favor of either party. Similarly, the District Court concluded that challenges to Eby, Ellwein, and Silvonen were properly denied. With respect to each of these jurors, the District Court determined that the challenges were untimely and that a review of the entire examination failed to show that there was a bias in these jurors affecting Cooper's substantial right to a fair trial. The District Court noted that Cooper's challenges to Eby, Silvonen, and Ellwein occurred after lunch recess, well after the actual exchanges with the jurors, and that Cooper failed to follow up with these jurors on the burden of proof question after Thueson was allowed

to read the instruction on burden of proof to the jury. The District Court noted that Cooper placed the court in a difficult position by lodging her challenges after lunch recess, since it did not have a transcript of the voir dire at the time and was left to attempt to recollect the statements of the panel members.

¶23    The District Court further concluded that there was nothing in the responses of Ellwein which required that he be excused for cause. Regarding Eby and Silvonen, the District Court noted that their challenged statements "were made early in the *voir dire* process, prior to a reading of the instruction on the preponderance of the evidence and prior to, literally, hours of additional discussion of the issues with the jury panel." Based on this, the District Court concluded that Cooper had failed to establish that the denial of her challenges for cause resulted in the seating of a biased jury. Additionally, the District Court also concluded that Cooper's challenges were untimely under M. R. Civ. P. 47(b), and found it "inconceivable" the Cooper's failure to challenge Eby, Silvonen, or Ellwein could be blamed on a lack of time to do so.

¶24    The District Court also addressed Cooper's contentions that Hoven's remarks during closing statements substantially affected her right to a fair trial. The District Court began its analysis here by noting that it had previously denied Cooper's motion in limine regarding improper argument. It reiterated its ruling that the motion was "vague and overbroad," and its direction that Cooper address issues of improper argument with a proper objection at trial. In this connection, the District Court observed that Cooper did not object to Hoven's "black mark" comments at trial, and therefore waived her right to appeal them in the post-judgment context. Cooper did object to Hoven's remarks that the

11

jurors were "lucky" to have Dr. Hanson in Helena. However, the District Court characterized the remarks as,

> [an] invited response to Cooper's closing argument indicating defense represents corporations. While defense counsel's statements that we were lucky to have Hanson in Helena may have gilded the lily, the Court does not believe that this statement at the end of a week-long jury trial denied Cooper's right to a fair trial. Cooper's motion for a new trial on the basis of improper closing argument by defense counsel should be denied.

¶25 Cooper now appeals from the jury's verdict and the rulings of the District Court. Cooper presents three separate issues on appeal. First, Cooper argues the District Court abused its discretion in denying her motion in limine. Second, Cooper claims the District Court abused its discretion in denying her challenges to jurors for cause. Third, Cooper claims it was an abuse of discretion for the District Court to refuse to grant a new trial based upon juror bias in voir dire and Hoven's improper comments during closing argument.

¶26 Although Cooper presents three separate issues on appeal, we find the District Court's denial of the motion for a new trial to be dispositive. Thus, we state the sole issue on appeal as follows:

¶27 *Did the District Court abuse its discretion in denying Cooper's motion for a new trial?*

## STANDARD OF REVIEW

¶28 We review a district court's decision to deny a motion for a new trial on the grounds enumerated in § 25-11-102, MCA, for an abuse of discretion. *Willing v. Quebedeaux*, 2009 MT 102, ¶ 19, 350 Mont. 119, 204 P.3d 1248. "The decision to grant

or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. 'The standard requires that the abuse of discretion be so significant as to materially affect the substantial rights of the complaining party.' " *Willing*, ¶ 19 (quoting *Lopez v. Josephson*, 2001 MT 133, ¶ 16, 305 Mont. 446, 30 P.3d 326). A district court's ruling on a motion in limine, and its ruling denying a challenge to a juror for cause, are both reviewed for an abuse of discretion. *State v. Schmidt*, 2009 MT 450, ¶ 27, 354 Mont. 280, 224 P.3d 618; *State v. Hart*, 2009 MT 268, ¶ 9, 352 Mont. 92, 214 P.3d 1273. A district court abuses its discretion if it makes a ruling arbitrarily, unreasonably, or without employing conscientious judgment, resulting in substantial injustice. *Hart*, ¶ 9.

**DISCUSSION**

¶29    In order to determine whether the District Court abused its discretion when it denied Cooper's motion for a new trial, we must examine the various errors which Cooper alleges combined to deny her a fair trial. First, Cooper argues that the District Court's denial of her challenges to cause, amounts to structural error requiring reversal and a new trial under *State v. Hausauer*, 2006 MT 336, 335 Mont. 137, 149 P.3d 895. Cooper claims that Silvonen's comment that a plaintiff's verdict is like a "life sentence" to a doctor, and the comments of Eby, Waters, and Ellwein, demonstrating a reluctance to apply the preponderance of evidence standard and bias towards the defendant, demonstrated bias sufficient to have them removed for cause. Cooper contends that these jurors were not sufficiently rehabilitated to allow them to serve impartially on the jury,

13

and that the District Court committed reversible error by denying her challenges for cause.

¶30 Additionally, Cooper disputes the District Court's determination that her challenges for cause to jurors Eby, Ellwein, and Silvonen were untimely under M. R. Civ. P. 47(b). This rule reads in pertinent part as follows:

> **Rule 47(b). Manner of selection and order of examination of jurors.** From the entire jury panel, an initial panel of 20 jurors shall be called in the first instance, and before any voir dire examination of the jury shall be had. Examination of all jurors in the initial panel shall be completed by the plaintiff before examination by the defendant. If challenges for cause are allowed, an additional juror shall be called from the entire panel immediately upon the allowance of challenge, and the juror called to replace the juror excused for cause shall take the number of the juror who has been excused, to provide a full initial panel of 20 jurors, whose examination shall be completed before any peremptory challenges are made. When the voir dire examination has been completed, each side shall have four peremptory challenges, and they shall be exercised by the plaintiff first striking one, the defendant than striking one, and so on, until each side has exhausted or waived its right.

Here, Cooper's challenges were made before examination by the defendant commenced; thus, she argues her challenges were not untimely.

¶31 Cooper also claims that Hoven's improper comments during closing prejudiced her right to a fair trial and constituted additional grounds for reversal. Cooper argues that Dr. Hanson's "black mark" comments in closing statements were not supported by the evidence, were highly prejudicial, and constitute grounds for a new trial under *Kuhnke v. Fisher*, 210 Mont. 114, 683 P.2d 916 (1984) and *Havens v. State*, 285 Mont. 195, 945 P.2d 941 (1997). Cooper also argues that Hoven's statements that the jury was "lucky"

to have Dr. Hanson in Helena constituted improper argument which prejudiced her right to a fair trial.

¶32    In this connection, Cooper notes that the purpose of her motion in limine was to place her objection to such comments on the record before trial, without requiring her counsel to repeatedly object to the improper argument and draw the jury's attention to these types of prejudicial comments.  Cooper notes that Dr. Hanson specifically represented to the District Court that he would he would refrain from improper argument and respect the rules of evidence.  For instance, in Dr. Hanson's brief in opposition to the motion in limine, he stated:

> Plaintiff's request to exclude "improper argument" is vague and overbroad, and should not be granted unless and until it becomes necessary in the context of trial.  Defense counsel is an experienced trial attorney and recognizes and respects the Rules of Evidence.  Defense counsel resents Plaintiff's suggestion that he would flagrantly violate those rules.
> Defense counsel further submits that several of the specific items Plaintiff lists as "irrelevant" and "inflammatory" should not be categorically excluded from trial, particularly in the context of closing argument.  Defense counsel is cognizant of his duties and responsibilities in doing his part to facilitate a fair trial for all parties.  However, he is confident in his ability to refrain from improper argument, and, more importantly, he is confident in the Court's abilities to rule properly in the context of trial on what is and is not relevant and proper argument.

¶33    Cooper argues the "black mark" comments to the jury were particularly prejudicial given the statements by the panel members during voir dire reflecting a predisposition in favor of the defendant, and concerns about the consequences a verdict against the doctor could have.  Cooper argues that a new trial is warranted under *Havens* since Hoven represented to the District Court he would not engage in the prohibited conduct and then engaged in the very conduct itself.  Cooper argues that her substantial right to a fair trial

15

was materially affected by these irregularities, and that the District Court manifestly abused its discretion when it denied her motion for a new trial.

¶34    Dr. Hanson urges us to affirm, and contends that any claimed irregularities in the proceedings did not prejudice Cooper's right to a fair trial.  First, Dr. Hanson argues that the District Court's denial of the motion in limine was not an abuse of discretion.  Dr. Hanson claims that the motion in limine was vague and overbroad and notes that the District Court specifically instructed Cooper to raise any objections based on the arguments noted in the motion at trial.  However, Cooper objected only to the comments that the Helena jurors were "lucky" to have Dr. Hanson, and did not raise an objection to the "black mark" comments.  Dr. Hanson argues the "lucky" comments were not prejudicial, and that Cooper waived her objections to the "black mark" comments, which were not prejudicial at any rate.

¶35    Second, Dr. Hanson argues the District Court acted within its discretion when it denied Cooper's challenges for cause.  Dr. Hanson asserts that Cooper's examination of the jury was confusing and was simply an attempt to pin potential members of the jury to a specific position before they had a chance to see evidence and hear argument.  Dr. Hanson further contends that none of the potential jurors evinced bias or enmity in favor of either party.  Dr. Hanson notes that Cooper failed to question jurors Eby and Silvonen about any potential bias after the preponderance of the evidence instruction was read, and failed to challenge them while in the presence of the jury.  Thus, whether any of the jurors were actually biased or would not apply the preponderance of the evidence standard at trial is not known.  Dr. Hanson further argues that Ellwein did not evince bias

16

or enmity, but was simply reluctant to define an amount of damages without hearing any evidence. With respect to Waters, who was challenged in the jury's presence, Dr. Hanson contends that he did not evince any bias, and was properly rehabilitated. Additionally, Dr. Hanson argues that the District Court correctly concluded that Cooper waived her right to challenge the jurors for cause under M. R. Civ. P. 47(b), by failing to bring such challenges at the conclusion of her examination before the lunch recess.

¶36 With regard to the denial of the motion for a new trial, Dr. Hanson contends there was sufficient evidence to support the defense verdict and that the District Court's denial of the motion in limine and challenges for cause did not constitute irregularities since they were made within the District Court's discretion. Further, Dr. Hanson disputes that Hoven's comments during closing statements materially affected Cooper's substantial right to a fair trial. Dr. Hanson faults Cooper for failing to object to the challenged comments during trial, and also contends that "Dr. Hanson's counsel did not break his word during his closing argument," and that *Havens* is inapposite.

¶37 As noted by the District Court, § 25-11-102, MCA, sets forth the bases upon which a verdict may be vacated and a new trial granted. Irregularities in the proceedings on behalf of the court, jury, or adverse party may constitute a grounds for reversal and a new trial under § 25-11-102(1), MCA. Upon a careful review of the record in this case, we conclude that Dr. Hanson's "black mark" statement during closing, in combination with juror Silvonen's "life sentence" statement and expressed concerns of the other jurors about the preponderance of the evidence standard, and Hoven's assurances to the court

17

that he would not engage in improper argument, constitute irregularities in the court proceedings which materially prejudiced Cooper's substantial right to a fair trial.

¶38 As noted above, several of the jury panel members were overtly reluctant to apply a preponderance of the evidence standard to the case before them. One juror voiced his belief that a plaintiff's verdict would be tantamount to a life sentence. This being so, Cooper's pretrial motion in limine, seeking to preclude improper argument on these sensitive issues, was prescient. Cooper sought a pretrial ruling precisely to guard against appeals to passion or prejudice—and the voir dire indeed revealed that such passions and prejudices were in the air. Understandably, Cooper wanted to avoid objecting to improper arguments in front of the jury, as such objections only underscore the inappropriate points made by opposing counsel. We have historically encouraged the filing of motions in limine for precisely this reason. *See State v. Ingraham*, 1998 MT 156, ¶ 36, 290 Mont. 18, 966 P.2d 103 ("A motion in limine has special advantages in situations such as this. A party may not wish to register an objection in the presence of the jury for tactical reasons, yet may wish to preserve the objection on appeal."); *State v. Krause*, 2002 MT 63, ¶ 32, 309 Mont. 174, 44 P.3d 493 (quotations omitted) ("The purpose of a motion in limine is to prevent the introduction of evidence which is irrelevant, immaterial, or unfairly prejudicial. Accordingly, the authority to grant or deny a motion in limine rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties.").

¶39 The "black mark" comment must be considered in the context of the anxieties expressed by the jurors. The remark was timed and intended to remind the jurors that the

doctor's reputation would be tarnished by a verdict against him, and to let them know it was alright—indeed, important—for them to take account of that prospect when deciding the outcome of the case. This suggestion that reputation should be taken into consideration during deliberations was improper and highly prejudicial, especially under the circumstances presented by voir dire.

¶40 In *Kuhnke* we expressly held that reputation argument was improper. *Kuhnke*, 210 Mont. at 122, 683 P.2d at 920-21. Cooper specifically cited *Kuhnke* to the District Court as a basis for her motion in limine. *See also Rush v. Hamdy*, 627 N.E.2d 1119, 1123 (Ill. App. 4 Dist. 1994) ("The impact of a verdict against a defendant upon the defendant's reputation is irrelevant and should not be considered by the jury in resolving the issue of defendant's negligence. A reference to the impact of a verdict upon defendant's reputation is an appeal to the passions and sympathy of the jury."). Further, the prospect of Hoven meeting the jurors "on the street" and their feeling ashamed of their verdict is highly improper and prejudicial. Such comments can play no legitimate role in the context of a civil jury trial. These comments were "well placed" in a manner which maximized their prejudicial effect on the jury and deprived Cooper of a meaningful opportunity to respond. *See Willing*, ¶¶ 26-27.

¶41 In light of the timing and circumstances present here, after Hoven made his "black mark" comments, the District Court's previous rulings should have been reexamined in conjunction with Cooper's motion for a new trial. An analogous situation was presented to this Court in *Havens*. In that case, plaintiff Steven Havens (Havens) was struck by an automobile at an intersection in Butte, Montana, and sued the state of Montana for

19

negligence in failing to install a traffic light at that intersection. *Havens*, 285 Mont. at 196, 945 P.2d at 941. After the collision, the motorist who struck Havens was issued a citation. However, Havens had been consuming alcohol the day of the accident, and a subsequent toxicology report showed a blood alcohol concentration of .068 and yielded a positive result for marijuana. *Havens*, 285 Mont. at 196, 945 P.2d at 941. Havens filed a motion in limine to prohibit the introduction of this evidence, which was denied by the district court. The State asserted that it would present this evidence at trial. In order to blunt the effect of such evidence on the jury, Havens himself introduced it in his case-in-chief. However, the State did not offer evidence that Havens' alcohol consumption contributed to the accident. Furthermore, the investigating officer testified at trial that the other motorist pulled in front of Havens so quickly that there was nothing Havens could have done to avoid the accident, and that his alcohol consumption did not play a part in the accident. *Havens*, 285 Mont. at 198, 945 P.2d at 942. The jury subsequently returned a verdict in favor of the State.

¶42    After the verdict, Havens moved for a new trial. Havens argued that evidence of his alcohol consumption and the results of the toxicology report had no relevance and caused him severe prejudice. The district court denied the motion for a new trial, and Havens appealed. First, this Court agreed with Havens that the evidence concerning his alcohol consumption and the toxicology report was prejudicial and irrelevant since it was not alleged that his consumption of alcohol or marijuana in any way contributed to the accident. *Havens*, 285 Mont. at 200, 945 P.2d at 943-44. Second, while the Court concluded that the district court did not err when it originally denied the motion in limine

20

based on the State's assurances, we nonetheless held that the district court should have reconsidered its ruling in the post-trial context "in light of the State's failure to fulfill its promise to elicit testimony establishing Havens' alcohol consumption as a factor in causing the collision." *Havens*, 285 Mont. at 201, 945 P.2d at 944. We prefaced this holding with the following analysis:

> Although we rarely find a manifest abuse of discretion in the denial of a motion for a new trial, there are certain instances in which the prejudicial matter at issue undermines the fairness to such a degree that a new trial is the only remedy. In *Kuhnke v. Fisher* (1984), 210 Mont. 114, 683 P.2d 916, we addressed the question of improper argument to the jury and noted that "the only way to be sure which, if any, of the defendants should be exonerated or whether plaintiff should recover at all is to grant a new trial." *Kuhnke*, 683 P.2d at 922. In *Putro v. Baker* (1966), 147 Mont. 139, 410 P.2d 717, we were confronted with a situation wherein jurors had been exposed to a prejudicial newspaper article about the case under consideration. The district court denied both a motion for a mistrial and a motion for a new trial. We reversed and held that "the guiding principle of our legal system is fairness. We must tenaciously adhere to the ideal that both sides of a lawsuit be guaranteed a fair trial. Sec. 27, Art. III, Montana Constitution [now Sec. 17, Art. II]." *Putro,* 410 P.2d at 722. We also reasoned "that unexplained prejudicial references to important matters in litigation may have a 'natural tendency' to infect the proceedings with an unfairness that can be corrected only by starting anew the legal contest." *Putro,* 410 P.2d at 722.

*Havens*, 285 Mont. at 200-01, 945 P.2d at 944.

¶43 In light of the foregoing, we conclude that the District Court abused its discretion in failing to grant Plaintiff's motion for a new trial. Because cumulative prejudice, culminating in the Defendant's unlawful appeal to the passions and prejudices of the jury, denied the plaintiff a fair trial, the only way this unfairness can be corrected is " 'by starting anew the legal contest.' " *Havens*, 285 Mont. at 201, 945 P.2d at 944 (quoting

21

*Putro*, 147 Mont. at 149, 410 P.2d at 722). Therefore, we reverse and remand for a new trial.

**CONCLUSION**

¶44   For the foregoing reasons, we conclude this is one of those rare cases in which it is manifest that a district court has abused its discretion in failing to grant a motion for a new trial. We therefore reverse the jury's verdict and remand this matter to the District Court for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We concur:

/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON

Justice James C. Nelson concurs.

¶45   I concur in the Court's Opinion and the Court's reversal on the issues involving the challenges for cause and defense counsel's closing arguments.

¶46   I would also reverse and remand for a new trial, however, on the matter of the trial court's denial of Cooper's motion in limine. The District Court erred in its determination that Cooper's motion was "vague and overbroad." It was not; the motion was specific in requesting the court to exclude certain categories of clearly inadmissible evidence.

22

Granting it should have been a no-brainer. Indeed, the motion turned out to be prescient as to at least two categories of the specified evidence.

¶47 Cooper properly requested the court to prohibit references to Hanson's professional reputation or standing; that Hanson needed special protection; or that there could be unspecified effects or consequences of the malpractice claims, this trial, or a malpractice verdict against Hanson—Numbers 4 and 5 in Cooper's motion. Opinion, ¶ 4. As the Court's Opinion states, that sort of evidence and argument is improper in a professional negligence case; it is irrelevant to the question of whether the professional person breached the applicable standard of care and, in so doing, caused the plaintiff damages. It does nothing but appeal to the passions, sympathies and biases of the jurors. Opinion, ¶¶ 37, 39, 40. Any professional person can make a mistake, and this State's tort system is designed to compensate the injured party for the professional's negligence—regardless of what sort of "mark" or effect that may have on his or her reputation, standing, practice or personal finances.

¶48 Even defense counsel recognized the impropriety of these types of comments and arguments—he feigned offense at even the suggestion that he would violate the Rules of Evidence and he assured the court and counsel that he would not engage in the very sort of improper comment and argument that he, eventually, did. Opinion, ¶¶ 5, 32.

¶49 Therefore, independently of any other error committed by the trial court in this cause, I would hold that the trial court erred in denying Cooper's motion in limine, and I would reverse and remand for a new trial on that error.

¶50     Finally, while I concur with the Court's Opinion generally in its resolution of the challenges for cause issue, I do not necessarily extend my agreement to the manner in which Cooper's challenges for cause were made in this case.  However, since we do not actually interpret the language of M. R. Civ. P. 47(b), I am satisfied to leave the proper construction of this Rule for another day.

¶51     I concur.

/S/ JAMES C. NELSON

Chief Justice Mike McGrath, specially concurring.

¶52     I concur in the result reached by the Court.  The refusal of the District Court to remove the disputed jurors for cause warrants reversal and a new trial.

¶53     However, I disagree with the Court's conclusions regarding defense counsel's statements in closing argument.  The comments did not deny plaintiff a fair trial when considered in the context of the entire argument.  The District Court correctly noted that counsel's remarks were an "invited response to Cooper's closing argument" and an appropriate reply.  Nor was the "black mark" comment sufficiently improper or prejudicial within the context of the proceeding.  That statement by defense counsel is different in character and degree from those in *Kuhnke*, the opinion cited by the majority where the remarks of counsel in closing caused the trial judge to describe them as terribly disturbing.  *Kuhnke*, 210 Mont. at 125, 683 P.2d at 922.

¶54    The jurors were admonished by the court that statements by the attorneys are not evidence. Juries are certainly capable of parsing argument from evidence and, thus, attorneys are generally given some latitude in closing argument.

¶55    I do not join with the Court's opinion regarding cumulative prejudice.


/S/ MIKE McGRATH