Justice Beth Baker delivered the Opinion of the Court.
***81 ¶1 In December 2006, David Bushong saw Dr. David Huebner for a soft-tissue mass on the bottom of his foot, which Dr. Huebner diagnosed as a benign ganglion cyst. Months later, a different provider referred Bushong to the University of Washington Medical Center, where the mass was diagnosed as a rare and aggressive cancer. Bushong died from the cancer in March 2009. His estate, widow, and children (Plaintiffs) filed suit against Dr. Huebner and the Great Falls Clinic, alleging medical malpractice. After a nine-day trial, a Cascade County jury found that Dr. Huebner was not negligent in his treatment of Bushong. Plaintiffs appeal.
¶2 Upon consideration of the following issues, we affirm.
1. Whether Plaintiffs are entitled to a new trial because the District Court refused to instruct the jury on loss of chance pursuant to § 27-1-739, MCA ;
2. Whether the District Court abused its discretion by prohibiting Plaintiffs from asking Bushong's treating physician Dr. Ronald Ray whether Dr. Huebner breached the applicable standard of care and by limiting Plaintiffs' impeachment of Dr. Ray on redirect;
3. Whether the District Court manifestly abused its discretion by denying Plaintiffs' motion for a new trial because of defense counsel's misconduct during trial.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 Bushong's primary care provider referred him to Dr. Huebner, a podiatrist, for evaluation of a soft-tissue mass on the bottom of his ***82 right foot. Dr. Huebner saw Bushong for two appointments in December 2006. At the first appointment, Dr. Huebner conducted a physical examination of the mass and reviewed previously ordered x-ray and MRI scans. He diagnosed Bushong with a probable ganglion cyst-a benign, noncancerous *98 condition. He discussed treatment options with Bushong, including surgically removing the cyst or aspirating it to remove the fluid. Bushong opted for aspiration at the first appointment. Dr. Huebner inserted a needle into the mass and aspirated twenty-six milliliters of bloody fluid with a watery consistency. Dr. Huebner sent twelve milliliters to the lab to test for infection. He did not send a sample of the fluid for cytological analysis and did not biopsy the mass. He explained to Bushong that he was not sure this was a ganglion cyst because the fluid was bloody, but that the bloody component may have been caused by Bushong's blood thinning medication. Because Dr. Huebner was concerned that the mass may be caused by an infection rather than a ganglion cyst, he did not give Bushong a cortisone injection.
¶4 After the lab report came back showing no infection, Dr. Huebner had a follow-up appointment with Bushong. At the follow-up appointment, Dr. Huebner discussed surgical removal of the mass. Dr. Huebner informed Bushong that the mass was a benign ganglion cyst and that surgery was not emergent. They did not schedule a surgery at that appointment.
¶5 About five months later, Bushong saw Dr. Ray, another podiatrist, about the soft-tissue mass. Dr. Ray ordered a new MRI scan. After reviewing the results, he referred Bushong to the University of Washington Medical Center without biopsying the mass out of concern that the new MRI showed signs of potential malignancy. Healthcare providers at the University of Washington Medical Center later diagnosed Bushong with extraskeletal osteosarcoma, a rare and aggressive cancer. Bushong died from the cancer in March 2009.
¶6 Bushong's estate filed suit against Dr. Huebner and the Great Falls Clinic in the Eighth Judicial District Court, Cascade County, in April 2010, alleging that Dr. Huebner was negligent in failing to diagnose or to take steps to diagnose Bushong's cancer in December 2006. The first question on the special verdict form asked whether Dr. Huebner was negligent in his treatment of Bushong. The form instructed the jury not to answer further questions if it answered "No." The jury determined that Dr. Huebner was not negligent in his treatment and did not reach the questions pertaining to causation or damages.
***83 STANDARDS OF REVIEW
¶7 "This Court 'must exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision.' " Seltzer v. Morton , 2007 MT 62, ¶ 94, 336 Mont. 225, 154 P.3d 561 (quoting Kneeland v. Luzenac Am., Inc. , 1998 MT 136, ¶ 53, 289 Mont. 201, 961 P.2d 725 ). Because of the deference accorded a jury's verdict, we will not reverse a district court for improper exclusion of evidence unless the complaining party shows prejudice to a substantial right. S & P Brake Supply, Inc. v. STEMCO LP , 2016 MT 324, ¶ 51, 385 Mont. 488, 385 P.3d 567 ; see also M. R. Evid. 103(a). A party's substantial right is not affected unless the error "is 'of such character to have affected the result' of the case." S & P Brake Supply , ¶ 51 (quoting In re A.N. , 2000 MT 35, ¶ 55, 298 Mont. 237, 995 P.2d 427 ); see also Reese v. Stanton , 2015 MT 293, ¶ 25, 381 Mont. 241, 358 P.3d 208.
¶8 We review a trial court's decision to grant or deny a jury instruction for an abuse of discretion. Mickelson v. Mont. Rail Link, Inc. , 2000 MT 111, ¶ 51, 299 Mont. 348, 999 P.2d 985. The standard of review of a trial court's denial of a motion for a new trial " 'depends on the basis of the motion.' " Reese , ¶ 17 (quoting Fish v. Harris , 2008 MT 302, ¶ 8, 345 Mont. 527, 192 P.3d 238 ). Regarding a district court's evidentiary rulings, we review for abuse of discretion. Reese , ¶ 17. We review a trial court's decision on a motion for a new trial pursuant to M. R. Civ. P. 59 for a manifest abuse of discretion. Evans v. Scanson , 2017 MT 157, ¶ 10, 388 Mont. 69, 396 P.3d 1284. "A manifest abuse of discretion is obvious, evident, or unmistakable, and significant enough to materially affect the substantial rights of the complaining party." Evans , ¶ 10.
DISCUSSION
¶9 1. Whether Plaintiffs are entitled to a new trial because the District Court refused to instruct the jury on loss of chance pursuant to § 27-1-739, MCA.
¶10 Plaintiffs argue that the District Court misapplied the law when it rejected *99 their proposed loss of chance jury instruction because Plaintiffs had not pleaded loss of chance as a separate claim. Plaintiffs argue that § 27-1-739, MCA, is not a separate cause of action from a medical malpractice case, and that it does not need to be pleaded specifically. Plaintiffs maintain that testimony from two of their expert witnesses was sufficient to warrant the instruction.
¶11 Section 27-1-739, MCA, allows damages against a health care provider if a negligent act or omission during diagnosis or treatment ***84 reduces a patient's chance of recovering and was a contributing cause of death or survival for a shorter period of time. A loss of chance theory allows the jury to determine that a provider's negligence denied a patient "the opportunity to recover." Aasheim v. Humberger , 215 Mont. 127, 133, 695 P.2d 824, 828 (1985). Now codified in § 27-1-739, MCA, loss of chance is included in the issue of causation. Aasheim , 215 Mont. at 133, 695 P.2d at 828 (holding that the trier of fact determines whether a defendant's negligence was a substantial factor in reducing plaintiff's chance of obtaining a better result).
¶12 Bushong's jury found that Dr. Huebner was not negligent. It did not reach the issue of causation. In light of the jury's finding that Dr. Huebner was not negligent, the District Court's instructional error, if any, did not affect Plaintiffs' substantial rights and was harmless. M. R. Civ. P. 61. We will not reverse for an alleged error when the outcome would have been the same had the error not been committed. See Pula v. State , 2002 MT 9, ¶¶ 34-35, 308 Mont. 122, 40 P.3d 364 (concluding that, because the jury did not consider the issue of intervening cause in reaching its verdict, the instructions on intervening cause had no effect on the outcome of the trial).
¶13 2. Whether the District Court abused its discretion by prohibiting Plaintiffs from asking Bushong's treating physician Dr. Ray whether Dr. Huebner breached the applicable standard of care and by limiting Plaintiffs' impeachment of Dr. Ray on redirect.
¶14 Plaintiffs raise two arguments in regard to Dr. Ray's testimony. First, they challenge the District Court's order prohibiting them from asking Dr. Ray about the applicable standard of care and whether Dr. Huebner breached it. Second, they challenge the District Court's ruling limiting their impeachment of Dr. Ray on redirect examination.
¶15 Mont. R. Civ. P. 26(b)(4)(A)(i) requires the parties to identify each person they expect "to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Rule 26(b)(4), however, does not provide disclosure requirements for either identity or opinions of non-retained experts. Norris v. Fritz , 2012 MT 27, ¶ 31, 364 Mont. 63, 270 P.3d 79. We have explained, nevertheless, that the opposing party must have adequate notice of a non-retained expert's testimony for it to be admissible. Norris , ¶ 32.
¶16 As part of its Rule 16 Scheduling Order, the District Court ordered the parties to exchange expert witness disclosures in accordance with M. R. Civ. P. 26(b)(4)(A)(i), but stated that the "parties need not provide a separate Rule 26(b)(4)(A)(i) disclosure or report for the ***85 substance and bases of opinions of treating physicians expressed in disclosed medical records." Plaintiffs argue that Defendants had adequate notice of the identity and opinion of Dr. Ray from their expert witness disclosures, in which Plaintiffs disclosed Dr. Ray as a treating physician and potential witness. Defendants took Dr. Ray's deposition on May 5, 2014. During this deposition, Dr. Ray stated that he would not offer critical opinions of Dr. Huebner's care at trial. During the deposition, Plaintiffs' counsel also stated, "I'm not asking you to criticize Dr. Huebner for what he did, and I haven't hired you as an expert witness."
¶17 In March 2017, two months before trial, Plaintiffs supplemented their responses to Defendants' first discovery requests, disclosing that Dr. Ray would "testify that Dr. Huebner breached his standard of care by not sending aspirated fluid to the scitology [sic] lab." Defendants filed a motion to exclude the testimony as improperly disclosed expert testimony. In response, the District *100 Court allowed the Defendants to re-depose Dr. Ray.[1] During his second deposition, Dr. Ray repeated that he intended his testimony to be limited to his care and treatment of Bushong, and that he did not intend to criticize Dr. Huebner or to testify that Dr. Huebner breached the standard of care. Given Dr. Ray's unequivocal deposition testimony, the District Court prohibited Plaintiffs from asking him about standard of care at trial.
¶18 Upon review of the record, we conclude that whether Plaintiffs' disclosures were sufficient is beside the point. Dr. Ray's first and second deposition testimony made clear that he was neither consulted for the purpose of offering standard of care opinions, nor was it his intent to offer those types of opinions or any testimony that was critical of Dr. Huebner. Thus, Defendants did not have "adequate notice of the non-retained expert's proposed testimony," Norris , ¶ 33, that Dr. Huebner breached the standard of care by not sending the fluid to the cytology lab. The District Court did not abuse its discretion by prohibiting Plaintiffs from attempting to elicit such standard of care testimony from Dr. Ray during trial.
¶19 Plaintiffs next argue that the District Court improperly limited their impeachment of Dr. Ray. On redirect examination, Plaintiffs asked him who Haley Denzer was. After Dr. Ray answered that she ***86 worked in administration at the Great Falls Clinic, Plaintiffs' counsel asked Dr. Ray, "[W]hen I tried to contact you prior to your second deposition, you wouldn't return my calls; is that correct?" Defendants objected that the questioning was outside the scope of direct or cross-examination. The District Court called for a sidebar conference, which was not recorded. After the sidebar, Plaintiffs ended their redirect.
¶20 Under M. R. Evid. 103(a)(2), a reviewing court will not assign error to a ruling that excludes testimony unless the complaining party shows prejudice to a substantial right and establishes that it made a record, by offer to the trial court, of the substance of the excluded evidence, if not "apparent from the context within which questions were asked." This offer of proof must be timely to allow the trial judge to make an informed ruling based on the issues as framed by the parties before the testimony is either allowed or excluded. See 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 103.20(4) (Mark S. Brodin ed., 2d ed. 2018) ("Presentation of an offer [of proof] after the trial or on appeal does not help the trial judge, and is too late.")
¶21 Although Plaintiffs' counsel provided an affidavit with his motion for a new trial detailing the testimony he sought to elicit from Dr. Ray, he failed to put any objection on the record during the trial or to make an offer of proof regarding the proposed redirect testimony. Plaintiffs did not ask to have the sidebar discussion recorded and did not make any further record of the discussion or of their attempted impeachment at any point during trial. Because the objection was that counsel's question was outside the scope, it is not "apparent from the context" what Plaintiffs' counsel was attempting to elicit. M. R. Evid. 103(a)(2). An offer of proof after the verdict is too late. Plaintiffs failed to preserve a trial record sufficient for us to review whether the District Court improperly limited Plaintiffs' impeachment of Dr. Ray.
¶22 We review the District Court's evidentiary rulings for an abuse of discretion. Plaintiffs have made no showing from the trial record that the District Court abused its discretion. See In re O.A.W. , 2007 MT 13, ¶ 51, 335 Mont. 304, 153 P.3d 6 ("The reason for M. R. Evid. 103(a)(2) is to require that if evidence is excluded there must be an offer of proof so that neither the trial court nor this Court has to speculate concerning what the evidence would have been.").
¶23 3. Whether the District Court manifestly abused its discretion by denying Plaintiffs' motion for a new trial because of defense counsel's misconduct during trial.
Comparative Negligence
¶24 Plaintiffs filed a pretrial motion in limine to exclude any alleged or implied *101 acts of comparative negligence on the part of Bushong. The District Court ruled that the facts regarding Dr. Heubner's assessment and recommendation and the patient's reliance upon that opinion were "to be considered by the jury in its evaluation of the element of causation and not as a matter of comparative negligence." Plaintiffs argue that Defendants violated the District Court's pretrial order regarding alleged ***87 or implied acts of comparative negligence during closing arguments by arguing that Dr. Huebner had given Bushong treatment options that included surgery and that Bushong did not follow up with Dr. Huebner's office to schedule the surgery. Plaintiffs argue that this insinuated Bushong's comparative negligence. They contend that Defendants further emphasized this by showing the jury a demonstrative exhibit during closing that had Dr. Huebner's appointment notes on the back with the doctor's recommendation for surgery highlighted in yellow. Plaintiffs did not object to counsel's argument, but point out that they addressed their objection in a pretrial motion in limine.
¶25 Implied or comparative negligence is a consideration when determining causation. As noted above, the jury did not reach the issue of causation. Defendants' closing arguments reviewed with the jury properly admitted and relevant medical records. Discussion of this evidence in the record was pertinent to the issue of causation, which the District Court allowed in its order in limine. Again, because the jury did not reach the issue of causation, error by the District Court, if any, was harmless. See M. R. Civ. P. 61. The District Court did not manifestly abuse its discretion by denying the motion for a new trial due to defense counsel's alleged violation of the District Court's pretrial order regarding comparative negligence.
Comments about expert witnesses
¶26 Plaintiffs argue that they were denied a fair trial when defense counsel made inappropriate comments during cross-examination of two expert witnesses and inappropriately vouched for Defendants' experts during closing arguments. Plaintiffs challenge several specific comments as inappropriate. First, they argue that defense counsel inappropriately challenged on cross-examination Dr. Charles Fenton's testimony that he was a contributing author on later editions of The Comprehensive Textbook of Foot Surgery . In response to counsel's question, Dr. Fenton pointed out to the jury that his name appeared among the listed authors in the second edition. Second, defense counsel asked whether the jury found for the defendant when Dr. Fenton previously had testified in a podiatric malpractice case involving cancer. The District Court sustained Plaintiffs' objection to the ***88 question. Later, defense counsel asked if Dr. Fenton served exclusively as an expert witness for plaintiffs in medical malpractice cases, and Dr. Fenton answered that he would serve as a defense expert if called to review a case for the defense. Defense counsel replied, "Of course you would." Plaintiffs posit that this comment implied to the jury that Dr. Fenton would just be a "hired gun" for anyone who paid him. Finally, Plaintiffs point to defense counsel's opening line when questioning their expert Dr. Bryan Martin about whether defense counsel had overheard him being coached by Plaintiffs' counsel before taking the stand. After Dr. Martin denied being coached, defense counsel stated argumentatively, "So if I overheard anything, I must have misheard?" Plaintiffs argue that these comments were exacerbated by defense counsel's arguments in closing that the Defendants had retained the "best" experts. Plaintiffs argue that these inappropriate comments "undermine[d] the fairness to such a degree that a new trial is the only remedy." Cooper v. Hanson , 2010 MT 113, ¶ 42, 356 Mont. 309, 234 P.3d 59. Defendants respond that their counsel's closing comments were in response to Plaintiffs' closing argument and not improper.
¶27 The decision to grant a new trial lies within the discretion of the trial court. Evans , ¶ 10. The district court judge "hears the entire trial and is in the best position to determine the prejudicial effect of attorney misconduct on the jury." Dees v. Am. Nat'l Fire Ins. Co. , 260 Mont. 431, 443, 861 P.2d 141, 148 (1993). This Court rarely holds that a district court has manifestly *102 abused its discretion. We will do so only if "the prejudicial matter at issue undermines the fairness to such a degree that a new trial is the only remedy." Havens v. State , 285 Mont. 195, 200, 945 P.2d 941, 944 (1997).
¶28 In denying Plaintiffs' motion for a new trial, the District Court found that "a contemptuous comment from counsel to an opposing witness like 'I bet you would' should not be embraced as best practice." The court explained, however, that the allegation Plaintiffs raised regarding defense counsel's comments did not undermine the fairness of the trial to such a degree that the only remedy would be to vacate the verdict and grant a new trial. See Cooper , ¶ 40. It observed that both sides took advantage of the latitude permitted in cross-examining opposing expert witnesses and in giving their closing arguments. The District Court determined that the jury's verdict was supported by the evidence presented. It declined to vacate the decision absent a showing that Plaintiffs' right to a fair trial was materially prejudiced.
¶29 We agree that defense counsel's sarcastic comments were ***89 inappropriate.[2] But the District Court did not manifestly abuse its discretion in determining that a few isolated comments over the course of a nine-day trial did not affect Plaintiffs' substantial rights to a fair trial. In Cooper , on which Plaintiffs rely, the challenged comments invited jurors in the final moments of trial to make their decision on irrelevant and improper grounds-the desire not to put a "black mark" on the doctor's reputation. Cooper , ¶ 39. Voir dire had "revealed that such passions and prejudices were in the air." Cooper , ¶ 38. Unlike in Cooper , the challenged comments here all related to the credibility of expert witnesses, something that a jury properly weighs in making its decision. Absent a showing of a manifest abuse of discretion that materially affects Plaintiffs' substantial rights, we will not reverse the District Court's decision denying a new trial. We hold there is no such abuse of discretion here.
CONCLUSION
¶30 The jury's verdict and the District Court's judgment are affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
JIM RICE, J.
Justice Dirk Sandefur, a member of the panel to which this case was assigned, has recused himself from participation in the decision due to the fact that he was the original presiding district court judge in this matter.

Prior to the second deposition, Plaintiffs' counsel acknowledged in open court that he had not talked to Dr. Ray about testifying to the standard of care before supplementing Plaintiffs' responses and was "not [one] hundred percent sure that Dr. Ray is going to testify that that's what the breach of the standard of care was."

Lawyers should follow principles of civility and professionalism, including the obligation to uphold the dignity of the court and show courtesy toward all persons involved in the legal system. See M. R. Pro. Cond. Preamble ¶ 10. See also American Board of Trial Attorneys (ABOTA) Code of Professionalism ("Be respectful in my conduct toward my adversaries.")