The CITY OF NEW CORDELL, Oklahoma,
a Municipal Corporation, Plaintiff in Error,

v.

Kenneth W. LOWE and Billie J. Lowe, hus-
band and wife, Defendants in Error.

No. 40216.

Supreme Court of Oklahoma.

Nov. 19, 1963.

Wesner & Wesner, Cordell, for plaintiff in error.

Bailey & Jones, Cordell, for defendants in error.

BLACKBIRD, Chief Justice.

A sewer line, referred to hereinafter as the "branch line" funneled sewage from the residence of the defendants in error, hereinafter referred to as plaintiffs, into one of the sewer mains, or main lines, of plaintiff in error, hereinafter referred to as defendant. On March 8, 1961, this main became clogged, and raw sewage backed up through the branch line into the residence, inundating its floors with about 4 inches of watery, foul-smelling refuse.

Thereafter, on the same day, employees of the defendant city assisted plaintiffs in draining off, and attempting to wash out, this refuse from the property, and, in the process, plaintiffs' rugs and carpets were taken to the City dump, and furniture and other household furnishings were transported to empty storage space in the city hall, where it has since remained. Plaintiffs vacated their home and moved into a furnished apartment; and had never attempted to re-occupy the home, at the time they brought this action against the defendant, about two months later, for damages on account of the inundation of their home.

In their petition, plaintiffs alleged, inter alia, that by reason of the overflow, their dwelling was impregnated with the raw sewage, and, as a result of this and the foul and offensive odors emanating therefrom, said home had become unfit for habitation, and its market value depreciated in the amount of $7500.00, for which they prayed judgment. Attached to their petition as "Exhibit A" was a claim previously presented to, and rejected by, defendant's city council, listing many other items of claim damages of a net total of $5080.50, for which plaintiffs also prayed judgment. Of the latter total, $2669.57 was comprised of the claimed value of the furniture, clothing and other personal property in the home at the time of its inundation. Another part of this total, or $1170.43, included such items as so-called "moving expenses" to the apartment plaintiffs were then occupying, and the anticipated expense of moving out of it into another home, when it was acquired, remuneration for plaintiffs' loss of time in both of such moves, reimbursement for their "nights lodging" in a motel the same evening the inundation occurred, plus the cost of the meals they had in a restaurant until they moved into the apartment, and rental on the apartment which, figured from "March, 1961" to February, 1962 (when the case was tried), totalled $875.00. In addition to these items, plaintiffs prayed judgment for an unitemized sum of $1500.00,

listed as being for "Discomfort and annoyance."

Evidence adduced at the trial, and virtually undisputed, fixed the cause of the sewer's clogging as tree roots which had penetrated the main line. Other evidence established that, in this instance, as in others that had occurred in the past, the line was unstopped by "rodding" or reaming it out. Testimony of one of the County Commissioners residing in the defendant city, tended to show that recurrence of such flooding, of a house belonging to him, had been prevented by the installation of a "check", or "cut off", valve in the line extending from his house to the connecting main. That the same could be accomplished with reference to plaintiffs' home, was apparently not taken into consideration by plaintiffs' witnesses to the diminution in their home's value as a result of the inundation. They gave estimates of the home's market value before the incident, ranging from $9000.00 to $10,000.00, inclusive. Their opinions of its value, after the overflow, ranged from $2000.00 to $3000.00, but they indicated that one element in their arriving at the latter low figures was the lack of assurance that other such overflows would not occur in the future. One of the plaintiffs, Mr. Lowe, and another of their witnesses, a real estate and insurance dealer named Burt Miller, even went further, under interrogation by plaintiffs' counsel, and revealed not only that plaintiffs did not have any insurance against such losses, but also that no such insurance protection was available for purchase. Each time the subject of insurance was mentioned in this manner, defense counsel objected and moved for a mistrial, but the trial court ruled against them, and exceptions were taken to said rulings.

The only expert testimony plaintiffs adduced in support of their claim of loss on their residence's contents was that of Art Self, a dealer in new and used furniture, appliances, and carpets. His estimates of the value of the various items of plaintiffs' household furnishings, both before and after the inundation, were taken from an appraisal he and a partner made after viewing them. This appraisal was not introduced in evidence, but in this witness' testimony from it, items mentioned in Mr. Lowe's testimony, and listed on plaintiffs' aforementioned "Exhibit A", as having a total value, before the overflow, of $1678, were given a value of only $635.00. With the salvage value of $200.50, Mr. Self gave them, deducted from his estimate of these items' previous value, plaintiffs' net loss thereon was only $484.50, or roughly only 22% of the amount they claimed.

█ At the close of plaintiffs' evidence, the defendant demurred thereto, but said demurrer was overruled, and defendant proceeded to introduce its evidence. At the close of all of the evidence, the cause was submitted to the jury, under the court's instructions, without defendant challenging the evidence's sufficiency by a motion for directed verdict, or otherwise. Thereafter a verdict was returned for plaintiffs in the lump sum of $8250.00, and judgment was rendered accordingly. After the overruling of its motion for a new trial, defendant perfected the present appeal.

█ Under its first proposition for reversal, defendant contends that the trial court erred in overruling its demurrer to plaintiffs' evidence for the reason that " * * * plaintiffs failed to show that defendant had knowledge and notice of the clogged condition of its sewer (before the overflow involved)." We have not reviewed the record as to this, because, as hereinbefore noted, no predicate was laid at the close of the trial for such a review. This court has long adhered to the rule for which defendant cites Friedman v. Hill, Okl., 325 P.2d 434, that:

"A question as to the sufficiency of the evidence for submission to the jury is not preserved for review where defendant demurs to the plaintiff's evidence and, after the demurrer is overruled, introduces evidence in his own behalf and makes no objection to the sufficiency of the evidence as a whole

until the filing of his motion for a new trial."

In the absence of a predicate for consideration of the evidence as a whole, defendant's first proposition presents no error preserved for review here; and we express no opinion thereon.

■ Under its "PROPOSITION III", defendant first complains of the trial court's having given its instructions numbered "(6)" and "(8)". One of the questions submitted to the jury by the giving of both of these instructions was whether or not the damages to plaintiffs' residence, and its contents, were permanent, or only temporary. Defendant cites the testimony of two of their witnesses who were building contractors, that some of the items of damage to plaintiffs' residence could be completely alleviated by repairs and replacements, costing substantially less than $2,000.00. This was in contrast to plaintiffs' evidence contemplated to show that the home's market value, after the overflow, was at least $7,000.00 less than before. Neither of the contractors included in their estimates any work or replacements on the sheet rock, or walls, of the home however, though the only one interrogated about it, testified that he had noticed damage thereto. We have carefully examined the testimony of both of these witnesses, and it does not support counsel's statement that they " * * * testified that the building could be restored to substantially the same condition as before for a cost of approximately $1500.00." Furthermore, defendant's evidence—even including that to the effect that the property was habitable and usable from a health standpoint—did not squarely refute plaintiffs' evidence contemplated to show that, as an aftermath of the overflow, the house had undergone, or would undergo, structural weaknesses and detriment, that the residual odor from the overflow's permeation of the house's walls, floors, and inner structure might remain indefinitely, and that this, together with common knowledge that the property had been subjected to that kind of an overflow, would permanently diminish its market value.

■ Nor did the trial court err, for the reason defendant avers, in giving the jury, by its instruction numbered "(5)" a general measure of damages for loss of household goods. This is for the reason that the evidence furnished no refutation—at least as to some of such items—to plaintiffs' claim that their loss was total.

To deal with additional complaints by defendant concerning the trial court's giving of its instruction numbered "(3)", we first quote said instruction as follows:

"Now, therefore bearing in mind these instructions, should you find and believe from a preponderance of the evidence that on or about March 8, 1961, and prior thereto the defendant permitted the sewer line to become stopped up or clogged and caused raw sewage water in said sewer line to back up and into plaintiffs' house, inundating and flooding the same and that the defendant had knowledge of said defective condition of the sewer line and had had a reasonable time to repair the same, then the defendant would be liable for the damage plaintiffs sustained as a result thereof, if any, and in determining the damage that plaintiffs have sustained you must determine whether said damage is permanent or whether said property, both real and personal, can be repaired and restored to its former usable condition and award the plaintiffs such sum of money as will compensate for the damage sustained when measured by the instructions heretofore given you, and you may consider the discomfort and annoyance sustained by the plaintiffs by reason of said flooding, if any, but not to exceed the sum of $1500.00 therefor, and not to exceed the sum of $7500.00 for damage to plaintiffs' real property, if any, and not to exceed the sum of $3580.60 for damage to plaintiffs' personal property and items incident thereto, loss of time, moving expense, rent

and all other expenses incident thereto, and your total judgment for plaintiffs and against defendant herein shall not exceed the total amount of $12,580.-50."

■■ It appears to be defense counsel's contention that by authorizing plaintiffs' recovery up to $1500 for the element of damages plaintiffs' petition referred to as "discomfort and annoyance" and it further described as for "* * * being driven from their home (by the overflow) * *", said instruction allowed damages for "loss of use of the premises", and that such an element cannot be authorized simultaneously with an instruction allowing permanent damages, but can only be authorized where the damages are temporary only. In City of Cushing v. High, 73 Okl. 151, 175 P. 229, cited by defendant, there is nothing to support such argument. On the contrary, we have said that damages from a nuisance for depreciation in the value of realty, and for physical discomfort and inconvenience, may be recovered in the same action. See Oklahoma City v. Eylar, 177 Okl. 616, 61 P.2d 649, 651, citing Cross v. Texas Military College (Tex.Civ.App.) 65 S.W.2d 794. These two elements of damages are of a different character. The first is for an injury to property, while the latter is for injury, or wrong, to the person. In this connection, see Oklahoma City v. Tytenicz, 171 Okl. 519, 43 P.2d 747, 748–749. Notice also other cases discussed in the Annotation at 10 A.L.R.2d 669, 670.

■ A more serious question is presented by defendant's contention, under its "PROPOSITION II" that the trial court erred in overruling its requests that a mistrial be declared on account of the admission of the testimony of two of plaintiffs' witnesses (already noted) that plaintiffs had no insurance to protect them against such losses, or damages, as those involved here. Defendant argues that the combined effect of this testimony, and the cited rulings of the trial judge, together with his refusal of defendant's Requested Instruction #2, to the effect that the city is not an insurer of its sewer system, was to prejudice the jury in plaintiffs' favor, and against it. They cite Ford v. Carpenter, 47 Tex. 447, 216 S.W.2d 558, and Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 311, wherein it was said:

"It is ordinarily error for plaintiff to mention the fact in the presence of the jury that the defendant is insured against the liability which he is seeking to establish, or that he has no protecting insurance."

Both of these cases cite the previous case of Rojas v. Vuocolo, 142 Tex. 152, 177 S. W.2d 962, whose facts are far different from the present case, but we think certain truths pointed out therein are applicable here. They would support reasoning that if proof, as an independent fact, that a defendant *has* insurance, is improper, because it has no bearing on his liability and is calculated to injure him, then proof that a plaintiff *has no* protecting insurance, likewise, has no bearing on the matter of liability, and can only be calculated to create prejudice in his favor. Such information encourages sympathy for a party who presumably has no way of being reimbursed for his loss than by a favorable verdict. In the cited case, the Texas court characterized such evidence as "a form of the inadmissible plea of poverty * * *", and further stated:

* * * * * *

"Having been objected to and having been ruled in, the jury were given to understand that they were to use it for some purpose. 'The fact that the incompetent testimony is laid before the jury under favorable rulings by the court, * * * tends to increase rather than diminish its prejudicial effect.'"

Plaintiffs' counsel infer that the objected to testimony was admissible. They obviously refer to portions of the testimony of plaintiffs' witnesses who expressed opinions calculated to show that their home's diminution in value from the overflow amounted to at least $7,000.00, and particularly to their indication that one factor in arriving at their estimates was their assumption that

such overflows would recur, when considered with the knowledge that they could not be insured against. We are not impressed with this attempted justification for bringing plaintiffs' lack of insurance before the jury, particularly in view of the hereinbefore mentioned County Commissioner's testimony indicating that recurrence of such overflows can be prevented by the simple expedient of installing a "check", or "cut off", on the home's branch sewer line. We have previously held that prejudice results as a matter of law when it is made to appear that defendant is covered by liability insurance. See Pratt v. Womack, Okl., 359 P.2d 223, 227. In the cited case, we quoted excerpts from our opinion in Redman v. McDaniel, Okl., 333 P.2d 500, referring to some former opinions in which we had refused to reverse, on account of the injection of the matter of insurance, because it was impossible for us to determine the extent of the harm thereby done. Recognizing that this is not all this court can do to discharge its duty in the matter, and that, in appropriate cases, this may be accomplished by directing a remittitur or granting a new trial, we said: "The action taken by this court will depend upon the facts and circumstances of each particular case."

In the present case, we think that in view of the circumstances shown by the record, justice requires a remittitur of $3250.00. The judgment is therefore affirmed upon condition that plaintiffs file a remittitur of $3250.00 in the trial court within ten days from the issuance of the mandate herein, failing which the judgment is reversed, with directions to grant a new trial.

HALLEY, V. C. J., and WILLIAMS, IRWIN and BERRY, JJ., concur.

WELCH, DAVISON and JACKSON, JJ., concur in result.

JOHNSON, J., dissents.