No. 00-451

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 323

MARCIA DIAS,

       Plaintiff and Respondent,

   v.

HEALTHY MOTHERS, HEALTHY BABIES, INC.,
a Montana Corporation,

       Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
                      In and for the County of Lewis and Clark,
                      The Honorable Jeffery M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

              Robert R. Throssell, Keller, Reynolds, Drake, Johnson & Gillespie, P.C.,
Helena, Montana

       For Respondent:

              Joseph C. Engel, III, P.C., Attorney at Law, Great Falls, Montana


              Submitted on Briefs:  May 2, 2002

                    Decided:  December 19, 2002

Filed:


                          Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Plaintiff, Marcia Dias, filed a complaint in the District Court for the First Judicial District in Lewis and Clark County in which she sought damages from the Defendant, Healthy Mothers, Healthy Babies, Inc., for wrongful discharge from employment and for unpaid wages, pursuant to §§ 39-3-201 through 217, MCA, wage and hour claim. Following trial the jury found that Dias was wrongfully discharged and awarded damages. HMHB filed a motion for a new trial which was denied by the District Court. HMHB appeals the District Court's denial of its motion for a new trial. We affirm the Order of the District Court.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court abuse its discretion when it denied HMHB's motion for a new trial?

¶4 2. Is Dias entitled to recover attorney fees pursuant to § 39-3-214, MCA?

FACTUAL AND PROCEDURAL BACKGROUND

¶5 On February 18, 1994, Marcia Dias was terminated from her employment as a general project director for Healthy Mothers, Healthy Babies, Inc. HMHB claimed it was having financial difficulties and could no longer afford her position. On June 3, 1995, Dias and four co-workers, who were also fired, filed a *pro se* complaint against HMHB, in which they alleged that they had been wrongfully discharged, in retaliation and without cause, in violation of HMHB's personnel policy and Montana law. The Plaintiffs requested compensatory damages for lost and unpaid wages

2

and punitive damages for retaliatory discharge.

¶6   On February 14, 2000, a six day jury trial commenced in the District Court regarding the claims of Dias and Amy Palmer.  During jury selection, in response to a question by Palmer's attorney, a prospective juror commented that she would have difficulty returning a verdict for the Plaintiffs if it could limit HMHB's ability to continue its programs or expose HMHB's volunteers to personal liability.  Palmer's attorney explained that the "noble volunteers" were protected from personal liability by the corporate shield.  The juror still expressed that she could be biased and Palmer's attorney moved to strike the juror for cause.

¶7   The District Court permitted Dias' counsel to question the juror before ruling.  Dias' counsel explained:

> Q.  (By Mr. Engel)  Well, the question that occurs to me in response to what you've stated, ma'am, is that when you sit as a juror, you're serving as a fact finder. You're supposed to base your opinion in the case upon what comes from the witness stand and is introduced into evidence.  And when you would be considering whether or not the defendant in any case has any wherewithal to respond to a judgment by paying, you would be considering something outside of that evidence.  So the general instruction - - the trials that I've participated in, when jurors are concerned about whether or not there may be insurance or some other - -
>
> MR. THROSSELL: Objection, Your Honor.
>
> THE COURT: Sustained.
>
> MR. THROSSELL: And I would like the record to reflect that counsel has tainted this matter and would like this objection on the record.
>
> THE COURT: That will be so noted.
>
> Q.  (By Mr. Engel) Well, you're not supposed to concern yourself with the source of the payment for any judgment.  So my question to you then, ma'am, would you be able to set aside that stated concern that you've indicated and

base your - - your service on the jury based upon the evidence and what your required to do?

A. I'm not certain that I could if it became apparent that the program would suffer. . . .

Following a short discussion among counsel and the court, the juror was stricken.

¶8 At the first recess subsequent to the exchange the following discussion took place outside the presence of the jury.

MR THROSSELL: . . . I wanted to make, for the record, now the defendant's objection that the availability of insurance has been interjected into this matter. It has tainted the entire jury pool. The defendants Healthy Mothers Healthy Babies asks for a mistrial and also would ask for the dismissal of the plaintiff's [sic] case in this matter, both the plaintiffs, Palmer and Dias.

. . . .

MR. ENGEL: Well, Your Honor, I was called out of order to address an issue that a juror raised with respect to her inability to be fair and impartial because she was concerned about the wherewithal of the defendants to respond. And in attempting to elicit from her that she was not to be concerned about the source of the payment for any prospective judgment, I mentioned the word insurance. And I don't think it prejudiced, I think, or tainted the panel in any respect. It was not mentioned in - - in any other context in that, Your Honor. And I will not mention it again.

. . . .

THE COURT: The motion will be denied. . . . And I don't know about giving a cautionary instruction at this point. It might bring more emphasis to it. So what I'll do, Mr. Throssell, if you still want a cautionary instruction, we can issue one at the end with the rest of the instructions. But I think you should think about whether it will emphasize this thing. At this point it's probably a minor issue, and lets not let it happen again.

¶9 In his remarks, Dias' counsel did not state that HMHB was insured, nor did he misstate any fact or rule of law to the jury. The word insurance was not uttered again. A curative instruction

4

was neither requested, nor was one given at the end of the trial. On February 22, 2000, the jury found that Dias had been wrongfully discharged from her employment without good cause and in violation of HMHB's own written personnel policy.  The jury found that Dias was entitled to $91,595.84 for lost wages and benefits, and $4,380.00 for her wage and hour claim.  The jury found HMHB had not acted in retaliation or engaged in actual fraud nor malice when it discharged Dias and, therefore, punitive damages were not awarded.  The District Court subsequently awarded $6,658.77 for attorney fees incurred to pursue the wage and hour claim.

¶10  A verdict was also returned in favor of Palmer.  That case has been settled and is not the subject of this appeal.

¶11  HMHB filed a motion for a new trial on April 5, 2000, and alleged that there were four irregularities during trial that prevented HMHB from having a fair trial.  The first alleged irregularity was counsel's use of the word insurance in front of the jury during *voir dire* examination.  HMHB argued it had been prejudiced by the remark.

¶12  On May 4, 2000, the District Court denied HMHB's motion and stated in part that: "The first stated reason for a new trial is that insurance was mentioned during *voir dire*.  While this is true, the Court sees no evidence of any prejudice.  The Court offered defense counsel to present a curative instruction, but non was requested."

## STANDARD OF REVIEW

¶13  The decision whether to grant a new trial is committed to the sound discretion of the district court and will not be disturbed

5

absent a showing of manifest abuse of discretion. *Newbauer v. Hinebauch*, 1998 MT 115, ¶ 15, 288 Mont. 482, ¶ 15, 958 P.2d 705, ¶ 15.

DISCUSSION

ISSUE 1

¶14 Did the District Court abuse its discretion when it denied HMHB's motion for a new trial?

¶15 HMHB contends that the District Court abused its discretion when it refused to order a new trial because counsel's reference to insurance during trial is strictly forbidden by prior cases of this Court and that the District Court abused its discretion when it found there was no prejudice to HMHB from the reference. We are not told whether HMHB had liability insurance which covers the claims made by Dias and, if it did, why it would not be prejudicial to Dias for the jury to mistakenly assume that the claim would force this struggling non-profit organization out of business.

¶16 Rule 411, M.R.Evid., provides:

> **Liability Insurance.**
> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

¶17 Whether or not a reference to insurance during *voir dire* violates Rule 411 is a subjective determination which is left

6

to the district court's discretion. A district court is not required to grant a new trial simply because the word insurance is spoken during trial.

> [T]he mere mention of insurance does not in every instance constitute reversible error. The important and controlling question is, How and under what circumstances was it brought into the case? . . . Each case however, must, generally speaking, stand on its own particular facts and incidents and be determined by the manner and circumstances in which the question of insurance was brought into the case. Circumstances vary–likewise will the general rule and it exceptions also vary.

*Francis v. Heidel* (1937), 104 Mont. 580, 587-88, 68 P.2d 583, 585.

The restriction imposed by Rule 411 is narrow. It prohibits evidence of insurance to prove liability but specifically provides that it may be admissible for other purposes and then offers a non-exclusive list of examples. The notion that the mere mention of insurance can move a jury to ignore the law and award a windfall to the plaintiff is an ancient myth unsupported by any empirical data which has been brought to this Court's attention. Common sense dictates that the opposite is true. Jurors concerned that an individual might not have insurance are more likely to protect that individual and his or her assets from damages which, unless personal to the individual, often seem abstract and theoretical. For example, in *Million v. Rahhal* (Okl. 1966), 417 P.2d 298, 300, cited in *Sioux v. Powell* (1982), 199 Mont. 148, 153, 647 P.2d 861, 864, the Oklahoma court stated:

> The prejudice created by a showing of the absence of insurance is likely to be greater than when the existence of insurance coverage is shown. Sympathy is one of the most controlling human emotions. In *City of New Cordell v. Lowe* [Okl., 389 P.2d 103], this court said: 'Such information encourages sympathy for a party who presumably has no way of being reimbursed for his loss

7

than by a favorable verdict.'

¶18 During *voir dire* examination, a prospective juror spoke at length about her difficulty returning a verdict in favor of the plaintiffs because she did not want to hamper the defendant's ability to continue its good work. Fearful that she may have evoked the sympathies of the entire jury, Dias' counsel attempted to explain that a jury is only permitted to base its factual findings on the witnesses and evidence presented at trial. He explained that a non-profit organization's ability to pay will not be in evidence, and should not be considered. He did not state that the defendant was insured. The defendant objected, but there was no lengthy discussion of the issue in front of the jury.

¶19 In those cases relied on by the defendant, (for example *Avery v. City of Anaconda* (1967), 149 Mont. 495, 428 P.2d 465, and *D'Hoodge v. McCann* (1968), 151 Mont 353, 443 P.2d 747) insurance was repeatedly referred to in an obvious effort to influence the jury's decision. In the present case, there was one reference to "insurance" in an effort to avoid prejudice to the plaintiff. We conclude that it did not occur in a manner that is prohibited by Rule 411.

¶20 The District Court is responsible for determining whether the reference to insurance is sufficiently prejudicial to warrant a new trial based on the circumstances and manner in which insurance is mentioned. The District Court concluded that the use of the word insurance during *voir dire* examination was a minor issue and concluded that there was no evidence of prejudice when it denied HMHB's motion for a new trial.

8

¶21 Based on the facts of this case, we conclude that the District Court did not abuse its discretion when it denied HMHB's motion for a new trial.

ISSUE 2

¶22 Is Dias entitled to attorney fees pursuant to § 39-3-214, MCA?

¶23 In her respondent's brief, Dias contends that she is entitled to attorney fees incurred to respond to HMHB's appeal from the wage and hour claim. HMHB asserts that Dias was required to file a cross-appeal to recover additional attorney fees incurred on appeal and that she did not do so.

¶24 Section 39-3-214, MCA, provides that a judgement in favor of the plaintiff in an action for unpaid wages must include all costs that were reasonably necessary to enter or maintain the wage claim, including attorney fees. We cited the legislature's intent to make the employee whole when we concluded that an employee was entitled to recover attorney fees for an action to pierce the corporate veil because the action was necessary to pursue the underlying wage claim. *Glaspey v. Workman* (1987), 230 Mont 307, 309, 749 P.2d 1083, 1084-85. In *Glaspey II v. Workman* (1988), 234 Mont. 374, 377, 763 P.2d 666, 668, we held that the mandatory language of § 39-3-214, MCA, required that reasonable attorney fees be awarded to an employee who successfully appealed a wage claim action. Once again, the legislature's intent to make the employee whole was cited in our holding. *Glaspey II*, 234 Mont. at 379, 763 P.2d at 672. Dias was awarded attorney fees for successful prosecution of her wage claim in the District Court. There was nothing for her to appeal. Her entitlement to attorney fees on

9

appeal is a separate issue for consideration by this Court.

¶25  We conclude that the mandatory language in § 39-3-214, MCA, and the legislature's intent to make an employee who prevails in a wage claim whole, requires that Dias recover attorney fees incurred to defend her judgment for wages on appeal.

¶26   We affirm the Order of the District Court and remand this case to the District Court for further proceedings to determine the amount Dias is entitled to for attorney fees incurred on appeal.


                              /S/ TERRY N. TRIEWEILER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER