FILED

07/18/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0554

DA 22-0554

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 137

CHERYL VOEGEL,

Plaintiff and Appellant,

v.

DEVYN SALSBERY,

Defendant and Appellee.

APPEAL FROM:   District Court of the Seventeenth Judicial District,
In and For the County of Phillips, Cause No. DV-2021-07
Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Samir F. Aarab, Caitlin Boland Aarab, Boland Aarab PLLP, Great Falls,
Montana

For Appellee:

Amanda Z. Duman, Williams Law Firm, Missoula, Montana

For Amicus Montana Trial Lawyers Association:

Justin P. Stalpes, Beck Amsden & Stalpes, PLLC, Bozeman, Montana

Submitted on Briefs:  April 26, 2023

Decided:  July 18, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Cheryl Voegel appeals the Seventeenth Judicial District Court's order granting a new trial and vacating judgment on a $168,500 jury verdict in her favor in an admitted-liability automobile accident case. The District Court determined that two statements by Voegel's counsel referred to liability insurance in violation of its rulings and thus constituted an irregularity preventing a fair trial under § 25-11-102(1), MCA. Based on our review of the two statements—neither of which used the word "insurance"—and the lack of demonstrated prejudice, we conclude that the court abused its discretion. We reverse and remand with instructions to reinstate the verdict and judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On June 18, 2018, Voegel was in a motor vehicle collision with 17-year-old Devyn Salsbery in Malta, Montana. Voegel was driving a Jeep Grand Cherokee and Salsbery a Ford F-150 truck behind her. As Voegel slowed to stop for a child waiting to cross the street, Salsbery ran into the back of Voegel's Jeep. Voegel sued for personal injuries, alleging that she had been unable to resolve pain issues from the collision. Salsbery admitted that she was negligent in rear-ending Voegel's Jeep. The case went to trial in May 2022 on contested issues of causation, damages, and Voegel's contributory negligence.

¶3 Both parties filed motions in limine. Citing M. R. Evid. 411, Salsbery sought to exclude any reference to State Farm Insurance (Salsbery's insurer), the fact that Salsbery had liability insurance at all, and "mention of insurance or the insurance industry during voir dire." Voegel did not contest the exclusion of testimony in citing Rule 411 but did

2

contest a blanket exclusion of the topic of insurance during voir dire. In its order, the District Court agreed that questions about the insurance industry during voir dire would be prejudicial and constitute reversible error but described "two narrow exceptions" to avoid prejudice. Voegel could ask prospective jurors whether they had an interest in or connection to the insurance industry and whether they had been exposed to any insurance company propaganda. The court informed Voegel that she would be required to give notice and establish a good faith basis if she intended to proceed with such questioning. The court also granted Voegel's motion to exclude testimony and argument that Salsbery could not afford to pay a judgment rendered in Voegel's favor and Salsbery's motion to exclude evidence about the parties' financial statuses.

¶4 At the final pretrial conference on the morning of the first day of trial, Voegel withdrew her claim for special damages (medical care and lost wages), leaving only her claim for general damages (pain and suffering and loss of enjoyment of life). Voegel informed the court and counsel that she would not be introducing her medical bills, which totaled less than $10,000, into evidence. Prompted by this withdrawal, Salsbery sought to introduce Voegel's medical bills herself. Salsbery argued that the bills revealed Voegel's exaggerated claim for general damages; Voegel responded that the bills were irrelevant because she no longer sought special damages. The District Court allowed the parties to brief the issue and stated that it would decide the matter the next morning before the parties' presentation of evidence.

¶5 Voir dire then began. In response to questioning by Samir Aarab, Voegel's counsel, a prospective juror offered that the preponderance-of-the-evidence standard felt low to him

3

because a civil judgment, despite not sending a defendant to prison, would still cost a defendant money. Another prospective juror agreed and shared his concern that a defendant "has to pay for the rest of their life" based on just over fifty percent certainty by the jury. "What happens if they get injured and they can't come up with money, you know?" the prospective juror asked. Aarab responded:

> Yeah, and that's not part of this case. We are not here to decide how this gets paid. We're not here to decide who pays what. Well, we're here to decide that, but it's not our concern or your concern as jurors where the money's coming from, okay? So but you think that standard, the burden of proof in a civil case in awarding money damages is too low?

Salsbery made no objection. After several more questions about the standard of proof, Aarab moved on to questions about the prospective jurors' willingness to compensate for pain and suffering while not compensating for medical bills or lost wages. Both parties made their opening statements.

¶6 The following morning, the District Court ruled that Voegel's medical bills were relevant and Salsbery could introduce them. Addressing Voegel's concerns about the conflation of specific and general damages, the court stated, "How you argue that to the jury and what you present to counter that is a separate -- that's a separate issue." Aarab shared that he had advised Voegel not to mention "State Farm" or "insurance" in response to cross-examination about her medical bills but stated that if Salsbery persisted with questioning about payment, he would treat it as an invited error. The court responded, "If you feel that [an] answer would necessitate mentioning insurance, you need to ask the Court for a moment and I'll discuss it with counsel." All witnesses testified without mentioning or implicating insurance.

4

¶7 After settling the jury instructions, verdict form, and exhibits for the jury, but before making closing arguments, Salsbery's counsel made the following request in chambers:

> I would request please that the Court caution plaintiff from referencing in closing argument as to who will be ultimately paying a judgment or who will be the source of payment or that the jury should or shouldn't consider who's been paying. That came up briefly during Voir Dire. I think that suggests there's insurance. I think that let's [sic] the jury know someone else is going to be paying. I don't think that issue should be brought up at all to the jury. I would ask the Court to caution the plaintiff on making that reference.

Aarab responded:

> It is improper for the jury to consider, and we had a Motion in Limine on this. It's improper for the jury to consider the Defendant's economic status as part of the case. They should decide what the damages are depending on the merits of the case, and that's -- that is the purpose of saying that. It's lawful to say it isn't proper for you to consider who will be paying this or where the money is going to come from, and I have a right to say that in closing.

Salsbery's counsel replied:

> I think that's a significantly different argument than saying you should not consider someone's economic status. I think saying who is going to be paying shows there's another payer.

The court instructed Aarab that he could tell the jury not to consider Salsbery's economic status but that he could not make any reference to any other payer. The court warned, "If you cross that line I am sure [Salsbery's counsel] will request a mistrial, and you should be aware this Court would be inclined to grant it."

¶8 Aarab began his closing argument by describing Voegel as a hard worker and the toll her injuries had taken on her. He challenged opposing counsel's representation that Voegel sought "big dollars," stating that Voegel instead asked for accountability, fairness,

5

and reasonableness. Aarab let the jury know that Salsbery's counsel would emphasize Voegel's medical bills and their small amounts in her closing. He continued:

> Remember, I told you from the very beginning, we're not asking for that. We're not asking for the costs of medical bills. They are a very small part of this case. They are a minimal part of this case. Medical bills aren't for Cheryl. You can see that when she shows them to you. Physical therapy, massage therapy, chiropractor, it's for the medical providers, it's not for her. It's not to compensate her. It's for other people and other providers so the burden of taking care of Cheryl doesn't fall on someone else, doesn't fall on the state.

At this point, Salsbery's counsel objected. The District Court cautioned, "Mr. Aarab, if you would be very careful." Aarab moved on, saying, "The biggest part of this case is what Cheryl has lost . . . as a coworker, as a friend, as a mother . . . . We have shown you what she has gone through the last four years."

¶9 After Aarab's closing statement, Salsbery's counsel requested a conference in chambers. There, she moved for a mistrial based on Aarab's comment that "referred to other payers," which was "clearly in direct contradiction to the warning the court gave . . . ." Aarab denied using the words "other payer" and repeated back the relevant paragraph from his closing. He stated, "And the point I was trying to make to the jury is that the medical bills, they are for the chiropractors, they are for those people that are being paid . . . ." Salsbery's counsel clarified that her issue was with Aarab's comment, "so the burden doesn't fall to others or the state." Aarab maintained that he adhered to the court's caution, did not use the words "other payer" or "insurance," and did not otherwise implicate insurance. The court stated that Aarab had "been playing very fast and loose with the direction of the Court" and had put a spin on the prohibited terms "insurers" or "other

6

payers" with his reference to "the state or others." The court believed a curative instruction would not be effective. It went on to analyze the effect of Aarab's comment:

> That said, I do not know how much emphasis the jurors will put on that portion of your closing at this time . . . . I'm hesitant after three days, we're now at 2:00 on the third day, to declare a mistrial. I'm not certain the jury even took great note of that particular portion of the Plaintiff's closing argument.

The court denied the motion. The court, however, cautioned Aarab to be careful in rebuttal and stated that, if not, it would consider a second motion for mistrial and sanctions. Salsbery's counsel gave her closing argument and Aarab his rebuttal without further objection.

¶10 The jury returned a verdict that Voegel was not contributorily negligent, she was injured by the collision, and the general damages she sustained totaled $168,500. Soon after, Salsbery renewed her motion for mistrial based on Voegel's improper introduction of liability insurance evidence. Voegel responded to the motion and, six weeks later, introduced an affidavit of the jury foreperson stating that he did not recall insurance being mentioned or implied in the case and that the topic had not been a part of the jury's deliberations.

¶11 In September 2022, the District Court ordered a new trial and vacated the judgment. The court stated that Aarab's comments to the venire about not being there "to decide who pays what" and not to be concerned "where the money's coming from" clearly referenced Salsbery's insurance in violation of the court's order in limine. The court determined, however, that these initial comments, given their brevity and placement during voir dire, "were not sufficiently prejudicial to impact Salsbery's substantial rights." The court,

7

however, took issue with Aarab's statement in closing that the burden of taking care of Voegel might "fall on someone else" or "the state." The court determined that this statement flouted the court's warning to Aarab not to indicate the existence of other payers in his closing statement—a warning generated by Aarab's comments during voir dire. The court determined that this "improper reference, while brief, was highly prejudicial" because it came during closing argument. Citing cases where repeated improper comments by counsel in violation of court orders had created cumulative prejudice, the court concluded that Salsbery was entitled to a new trial pursuant to § 25-11-102(1), MCA. The court disregarded the juror's affidavit pursuant to M. R. Evid. 606(b).

## STANDARDS OF REVIEW

¶12     "The decision whether to grant a new trial is committed to the sound discretion of the district court and will not be disturbed absent a showing of manifest abuse of discretion." *Dias v. Healthy Mothers, Healthy Babies, Inc.*, 2002 MT 323, ¶ 13, 313 Mont. 172, 60 P.3d 986. We similarly review a trial court's evidentiary rulings for abuse of discretion. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. Courts, nevertheless, are bound by the Rules of Evidence and applicable statutes. "Thus, to the extent the court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo." *Derbyshire*, ¶ 19.

## DISCUSSION

¶13     The basis for Salsbery's motion in limine to exclude all mention of insurance, including during voir dire, was Rule 411 of the Montana Rules of Evidence. Rule 411 prohibits evidence that a person was or was not insured against liability "upon the issue of

8

whether the person acted negligently or otherwise wrongfully." M. R. Evid. 411; *Dill v. Mont. Thirteenth Judicial Dist. Court*, 1999 MT 85, ¶ 21, 294 Mont. 134, 979 P.2d 188 ("The rule only prohibits the introduction of insurance when it is offered for the purpose of showing negligence or liability."). Evidence that a party is insured may be admitted for another purpose, such as to prove "agency, ownership, or control, or bias or prejudice of a witness." M. R. Evid. 411.

¶14 The Montana Commission on Rules of Evidence noted that the "primary reasons for exclusion of evidence of insurance are its irrelevance, prejudicial effect, and potential misuse by the jury." M. R. Evid. 411, Comm'n Comments (1976). The driving concern behind the rule and its federal equivalent is that "if the jury were to learn of the party's coverage or lack of coverage by liability insurance, it would relax its standards in determining both fault and damages." David P. Leonard, *The New Wigmore: Selected Rules of Limited Admissibility* § 6.1 (2002) [hereinafter *The New Wigmore*]. In particular, courts fear that "if the fact finder is informed of the existence of liability insurance, it will be inclined to return a large verdict against the insured party because it will assume that party will not have to pay a judgment rendered upon the verdict." *The New Wigmore* § 6.4.[1]

---

[1] Attorney statements during voir dire and closing argument are not evidence, and the jury was instructed not to regard them as such. M. R. Evid. 411 nevertheless guides our analysis of Aarab's statements because attorneys may not circumvent the rule by injecting prejudicial comments about insurance during their argument. Allowing otherwise would render Rule 411 meaningless. *See The New Wigmore* § 6.7.4 ("[T]he jury voir dire process is not technically governed by the evidentiary rules . . . . Nevertheless, whether the exclusionary rule serves its purposes hardly depends on the method by which jurors are informed of the fact [a] defendant is insured.").

9

¶15 Before granting a new trial, courts must examine the case-specific effect of the introduction of insurance into the trial. *Jenks v. Bertelsen*, 2004 MT 50, ¶ 25, 320 Mont. 139, 86 P.3d 24. "A district court is not required to grant a new trial simply because the word insurance is spoken during trial." *Dias*, ¶ 17. Instead, the controlling question is, "How and under what circumstances was [the topic of insurance] brought into the case?" *Dias*, ¶ 17 (citation omitted). The mention of insurance must "stand on its own particular facts" as sufficiently prejudicial to warrant a reversal. *Jenks*, ¶ 25 (citation omitted); *see also The New Wigmore* § 6.7.7 ("Vague or highly indefinite references to insurance do not necessarily create the kinds of prejudice against which the exclusionary rule is intended to protect. It is the task of the court to determine whether the reference is sufficiently serious to require action; that task must be performed on a case-by-case basis." (footnotes omitted)).[2]

¶16 For example, in *Dias v. Healthy Mothers, Healthy Babies*, we concluded that an attorney's mention of insurance during voir dire was not prejudicial. *Dias*, ¶ 19. In that case, a prospective juror commented that she would have difficulty returning a verdict for the employee-plaintiff because it could limit the nonprofit-defendant's ability to continue

---

[2] Amici cast doubt on the purported rationale for Rule 411, especially the broader the rule is read. Our caselaw and various treatises also have questioned a broad reading of the rule. *Dias*, ¶ 17 ("The notion that the mere mention of insurance can move a jury to ignore the law and award a windfall to the plaintiff is an ancient myth unsupported by any empirical data which has been brought to this Court's attention."); Robert P. Mosteller, *McCormick on Evidence* § 201 (8th ed. 2020) (suggesting that the policy of secrecy around any and all insurance evidence creates immense costs through "extensive and unnecessary arguments, reversals, and retrials stemming from elusive questions of prejudice and good faith" when "most jurors probably presuppose the existence of liability insurance anyway . . . ."). We find it unnecessary to further probe the discussion in this case.

its programs. *Dias*, ¶ 6. The employee's counsel told the prospective juror that she would need to decide the case based on the evidence, of which a defendant's ability to pay was not a part. Counsel continued, "So the general instruction -- the trials that I've participated in, when jurors are concerned about whether or not there may be insurance or some other --." *Dias*, ¶ 7. At that point the nonprofit objected, the court sustained the objection, and the employee's counsel continued, "Well, you're not supposed to concern yourself with the source of the payment for any judgment." *Dias*, ¶ 7. We affirmed the denial of the nonprofit's motion for a new trial because there had been only one reference to insurance during voir dire and it was made in an effort to avoid prejudice to the employee. Moreover, counsel never stated directly that the nonprofit was insured. *Dias*, ¶¶ 18-21.

¶17 We have examined on several other occasions the case-specific effect of injection of the topic of insurance into a trial and concluded it was not prejudicial. *See, e.g.*, *State ex rel. Gadbaw v. Eighth Judicial Dist. Court*, 2003 MT 127, ¶ 28, 316 Mont. 25, 75 P.3d 1238 (reversing decision to bifurcate a trial and dismiss an insurance company defendant because the introduction of evidence that plaintiffs were insured was not convincingly prejudicial); *Newbauer v. Hinebauch*, 1998 MT 115, ¶ 18, 288 Mont. 482, 958 P.2d 705 (affirming denial of the victim's motion for new trial where the victim inadvertently and innocuously mentioned on cross-examination that the driver told her he had insurance); *Massman v. Helena*, 237 Mont. 234, 244-45, 773 P.2d 1206, 1212-13 (1989) (upholding denial of new trial where two questions about insurance either fell under an exception to Rule 411, were general in nature, or did not indicate to the jury that the plaintiff had insurance); *Haynes v. Cty. of Missoula*, 163 Mont. 270, 287-88, 517 P.2d 370, 380-81

11

(1973) (reversing grant of new trial because two broad questions about the venire's connections to the casualty insurance industry were asked in good faith to look for bias and were not prejudicial).

¶18 On the other hand, we have concluded on occasion that the injection of the topic of insurance into a trial was prejudicial and constituted reversible error. *See, e.g.*, *Sioux v. Powell*, 199 Mont. 148, 153-54, 647 P.2d 861, 864 (1982) (vacating a jury's verdict where the plaintiff was allowed to testify that he did not have collision or liability insurance because the jury may have inferred that he was unable to purchase a new truck or that he would not be able to pay a judgment if he lost on the defendant's counterclaim); *Avery v. City of Anaconda*, 149 Mont. 495, 498, 428 P.2d 465, 467 (1967) (reversing denial of a new trial because plaintiff's counsel asked the entire venire whether they invested in Glacier Insurance Company and asked each prospective juror individually whether they invested in any insurance company, clearly intending to convey that the City of Anaconda was insured); *Wilson v. Thurston Co.*, 82 Mont. 492, 495-96, 267 P. 801, 801-02 (1928) (reversing decision to allow the plaintiff to "interrogate" eight prospective jurors about whether they had any immediate relatives employed by any insurance company in Butte because the questioning created an inference that the defendant was insured and attempted to prejudice the jury against the defendant).

¶19 In this case, the District Court ordered a new trial under § 25-11-102(1), MCA. That statute allows a trial court to vacate a jury's verdict and grant a new trial for any "irregularity in the proceedings" that materially affected the substantial rights of a party. The court relied on two cases where we concluded that attorney statements made in

12

violation of a court order were prejudicial, warranting a new trial: *Anderson v. BNSF Railway*, 2015 MT 240, 380 Mont. 319, 354 P.3d 1248, and *Willing v. Quebedeaux*, 2009 MT 102, 350 Mont. 119, 204 P.3d 1248.

¶20   In *Anderson*, BNSF ignored a court's order in limine to refrain from commenting that lawsuits should not improve a plaintiff's standard of living or make him a millionaire. *Anderson*, ¶ 74. During closing, BNSF repeatedly referenced made-up claims, conspiring union attorneys, and collateral sources, which revealed "a consistent tactic to characterize Anderson's case as little more than an attempt to get rich off of non-existent injuries . . . ." *Anderson*, ¶ 79. We concluded that the statements as a whole "were simply too prejudicial for us to retain confidence that the jury's verdict was based on the evidence and not prejudice." *Anderson*, ¶ 80. In *Willing*, a court abused its discretion in not granting a new trial after defense counsel referred in closing to techniques described in the plaintiff's expert's textbook in direct contradiction to the court's order barring such reference because the defense had not disclosed the textbook. *Willing*, ¶¶ 26-27. The comment, although brief, was well-placed in the closing argument and secured the exact advantage for the defense the District Court had sought to prevent with its order. *Willing*, ¶ 26. In reversing and remanding for a new trial, we explained that "[c]ontradicting an expert's testimony, not by another's opinion, but by the expert's own writings, is a significant trial development with potentially devastating impact to the side offering that expert's opinion." *Willing*, ¶ 26. *See also Cooper v. Hanson*, 2010 MT 113, ¶ 39, 356 Mont. 309, 234 P.3d 59 (defense counsel's statement during closing argument that a verdict for the plaintiff would put a "black mark" on the defendant, in combination with prospective juror

13

statements during voir dire that a malpractice verdict was like a "life sentence," constituted irregularities that prevented a fair trial); *Lopez v. Josephson*, 2001 MT 133, ¶ 46, 305 Mont. 446, 30 P.3d 326 (pervasive misconduct of the victims' counsel in violation of the court's orders prevented the neighbor from receiving a fair trial on the merits).

¶21 Reviewing the District Court's order for new trial in this case, we examine Aarab's comments in light of Rule 411 and its purpose, our caselaw interpreting the rule, and the scenarios previously determined to be sufficiently prejudicial to warrant a new trial under § 25-11-102(1), MCA.

**Counsel's Comments During Voir Dire**

¶22 In its order granting a new trial, the District Court first determined that Aarab's comments during voir dire instructing prospective jurors not to be concerned about "who pays what" or "where the money's coming from" were brief and not, on their own, sufficiently prejudicial to impact Salsbery's substantial rights. We agree. These comments differ from other cases where the repeated mention of insurance and interrogation on the same during voir dire was reversible error. *See Avery*, 149 Mont. at 498, 428 P.2d at 467; *Wilson*, 82 Mont. at 495-96, 267 P. at 801-02. Aarab's comments were more like the brief comment made in *Dias* as counsel attempted to address potential bias in a prospective juror. *See Dias*, ¶ 19. Aarab made the comments in response to two prospective jurors' stated reluctance to apply a preponderance standard of liability. He never stated that Salsbery was insured or—unlike in *Dias*—even used the word "insurance." It is appropriate, as Aarab pointed out, for counsel to clarify with prospective jurors that they are not to consider a defendant's economic status in reaching their verdict. Though his comments also could

14

have implied an alternate source of funds to pay a verdict, they advised the jury *not* to consider it. We agree with the District Court's interpretation of Rule 411 on this point and its conclusion that Aarab's comments during voir dire were not sufficiently prejudicial to impact Salsbery's substantial rights.

**Counsel's Statement During Closing Argument**

¶23    In granting a new trial, the District Court took primary issue with Aarab's single statement in closing that Voegel's medical bills were not to compensate Voegel, but "for other people and other providers so the burden of taking care of [Voegel] doesn't fall on someone else, doesn't fall on the state." The court concluded that the statement was made in direct contradiction to its warning not to reference another payer and was highly prejudicial given its placement in closing argument.

¶24    Our review of the statement, its context in the full argument of counsel, and the District Court's contemporaneous reaction to its prejudicial effect, compels us to conclude that the court abused its discretion in granting a new trial. As in voir dire, Aarab's statement in closing argument did not use the word "insurance" or refer to Salsbery. Indeed, Aarab's statement did not refer to any other payer of a potential verdict and thus did not violate the court's order. Rather, Aarab's statement addressed the medical bills that were *not* a part of the requested verdict and that Aarab tried unsuccessfully to exclude. In making his case for an award of general damages, Aarab explained that payments for Voegel's medical bills would go to her medical providers but not to Voegel herself. His statement did not create an inference that Salsbery was insured and that her insurer would pay any award for general damages. To the extent it could be interpreted to refer to other

15

payers, Aarab's statement was directed to items of damage Voegel was *not asking* this jury to award, not to any verdict the jury may reach. Aarab's statement thus was unlike those in *Anderson* or *Willing*, where attorneys introduced the exact topic prohibited by the court in order to gain the trial advantage the court wished to prevent. *See Anderson*, ¶ 79; *Willing*, ¶ 26. The court here wanted to prevent the jury from considering any other payer of a verdict it might award in Voegel's favor. Aarab's passing statement about "someone else" or "the state" possibly paying Voegel's medical providers did not achieve this advantage for Voegel and thus cannot be said to have prevented a fair trial. Aarab's comment thus is distinguishable from the pervasive conduct in *Anderson* and the singular but "devastating" comment in *Willing*.

¶25 Aarab's statement, at worst, was an ambiguous reference to the general topic of insurance. If so construed, it just as likely could have been a reference to Voegel's own health insurance as to Salsbery's liability insurance. If inferred to raise the topic of insurance generally, we reiterate our conclusion in *Dias* that the mere mention of insurance is not sufficiently prejudicial to warrant a new trial. *See Dias*, ¶ 17. To the extent that the court interpreted mention of the words "the state" or "someone else" to raise the subject of insurance in violation of Rule 411, the court's interpretation of the rule was overbroad.

¶26 Moreover, in the context of the closing arguments as a whole, Aarab's statement was brief and isolated. In the main, his closing argument focused on justifying a request for a $275,000 verdict, describing how the presented evidence demonstrated the impact of Voegel's injuries on her day-to-day life. Salsbery focused her closing argument on the unreasonableness of a $275,000 verdict and, using Voegel's medical bills, suggested a

16

verdict between $10,000 and $15,000. Salsbery described a slow-speed collision and Voegel's delayed actions after the accident. She also disputed the extent of Voegel's injuries and causation, suggesting that Voegel's manual labor was the true cause of her injuries. Aarab, in rebuttal, argued again that the evidence supported his client's claims for general damages: "Where are the bills for her . . . lack of sleep? Where are the bills for her lack of when they took away everything that she enjoys in life? There are no bills. You have to decide what that's worth." These arguments—not Aarab's statement about the burden of unclaimed medical bills falling on someone else or the state—were the focus of attention in his closing presentation.

¶27    Finally, the District Court's contemporaneous analysis of the statement's prejudicial effect supports our conclusion. In chambers directly after the statement, the court shared that the jury may not have taken great note of it and denied a motion for mistrial. Upon review of the record in its entirety, we conclude that Salsbery has not demonstrated an "irregularity in the proceedings" that materially affected her substantial rights. *See* § 25-11-102(1), MCA. An isolated comment in the middle of an otherwise appropriate closing argument after a three-day trial, in context, did not inject substantial prejudice into what otherwise appears to have been a well-tried case on both sides. At the end of the day, the jury awarded less than two-thirds of the amount Voegel requested.

**Juror Affidavit**

¶28    We agree with the District Court's decision not to consider the affidavit of the jury foreperson in deciding Voegel's motion for a new trial. M. R. Evid. 606(b) provides that jurors may not provide, upon inquiry into the validity of a verdict, affidavits as to the effect

17

of any matter occurring during deliberations.  The juror's affidavit stating that the jury did not consider insurance in their deliberations did not meet one of the three narrow exceptions to that rule, and the District Court properly disregarded it.  M. R. Evid. 606(b).

**CONCLUSION**

¶29    Our review of Rule 411, relevant caselaw, the statements at issue, and their context leads us to conclude that the District Court misapplied the rule and abused its discretion when it ordered a new trial.  Aarab's comments during voir dire and closing argument do not "stand on [their] own particular facts" as sufficiently prejudicial to warrant a new trial. *See Jenks*, ¶ 25.  There was ample evidence to support the jury's verdict, the comments were brief and ambiguous, and counsel did not suggest Salsbery had insurance to pay the damages Voegel asked the jury to award.  We reverse the court's order and remand with instructions to reinstate the verdict and judgment.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR


Justice Jim Rice, dissenting.

¶30    I would conclude from a review of the record that the District Court correctly assessed what occurred in the courtroom and that its granting of a new trial was not a

18

"manifest abuse of discretion." *Steffensmier v. Huebner*, 2018 MT 173, ¶ 8, 392 Mont. 80, 422 P.3d 95.

¶31 Prior to trial, the District Court entered a detailed order in response to Defendant's motion in limine that required Plaintiff's counsel to notify the court in advance of proposed inquiries that could implicate insurance, outside of the presence of the jury. In response to a juror's comment during voir dire about the financial burden for paying damages, Plaintiff's counsel stated:

> We are not here to decide how this gets paid. We're not here to decide who pays what. Well, we're here to decide that, but it's not our concern or your concern as jurors where the money's coming from, okay?

Later, in chambers, Defendant's counsel raised a concern about this exchange and asked the District Court to caution Plaintiff's counsel about the issue. In response, Plaintiff's counsel summarized his understanding of the contours of the limine order, to which the District Court expressly disagreed, stating Plaintiff's counsel had "cross[ed] the line":

> Defense: [W]ho will be ultimately paying a judgment or who will be the source of payment, or that the jury should or shouldn't consider who's been paying . . . I think that suggests insurance. I think that lets the jury know someone else is going to be paying. I don't think that issue should be brought up at all to the jury. . . .
>
> Plaintiff: . . . It is improper for the jury to consider . . . the Defendant's economic status as part of the case. They should decide what the damages are depending on the merits of the case, and that's—that's the purpose of saying that. *It's lawful to say it isn't proper for you to consider who will be paying this or where the money is going to come from, and I have a right to say that in closing.*
>
> Defense: I think *that's a significantly different argument* than saying you should not consider someone's economic status. I think saying who is going to be paying shows there's another payer.

19

The Court: *I agree. That crosses the line.*

Plaintiff: *May I be permitted to say it's not proper for you to consider Miss Salsbery's economic status?*

The Court: *You may say that, but you may not make any reference that would infer to anyone any other payer.*

Plaintiff: *I wouldn't do that*. Your Honor. This is a tight rope we have to walk, but I think it's important for the jury to know that when they consider the calculation of damages in this case, they should do so simply based on the merits of the case, not based on anything else, and that's what I will be saying.

The Court: *And that you are allowed to say. If you cross that line I am sure [Defense counsel] will request a mistrial, and you should be aware this Court would be inclined to grant it.*

(Emphasis added.)

¶32    Thus, after a specific discussion in chambers, the District Court ruled that Plaintiff "may not make any reference *that would infer to anyone any other payer*," at the risk of mistrial. (Emphasis added.) It should be noted that, on appeal, Plaintiff does not directly challenge as error the District Court's constraint upon counsel making any reference that would "infer . . . any other payer," and indeed, counsel told the District Court he "wouldn't do that." However, despite this ruling and counsel's assurance, he shortly thereafter argued to the jury:

Plaintiff: Medical bills aren't for Cheryl. You can see that when she shows them to you. Physical therapy, massage therapy, chiropractor, it's for the medical providers, it's not for her. It's for other people and other providers so the burden of taking care of Cheryl doesn't fall on someone else, doesn't fall on the state.

Defense: Your Honor, I'll object to this.

20

At the conclusion of Plaintiff's counsel's closing, the Defendant moved for mistrial, citing Plaintiff's comments about the medical bills being "not for her," but for "other people and other providers" so that the burden would not fall "on someone else, doesn't fall on the state," arguing that "there can be no doubt with the jury at this point that there is another payer, which is exactly what the Court warned him not to do." Plaintiff's counsel responded that he had not mentioned "insurance" and was merely trying to make the point that medical bills "are for those people that are being paid, and the reason—the reason that's the case is so she can be taken care of." The District Court rejected counsel's explanation, stating "the issue is with when you said so the burden doesn't fall to others or the state." When Plaintiff's counsel offered that he had not violated the court's ruling, the court pointedly disagreed, stating, "Mr. [Counsel], the Court disagrees with that. You have been playing very fast and loose with the direction of the Court. The Court specifically said insurers and other payers, so you put a spin on that to say the state or other – or others."

¶33    While Plaintiff's counsel avoided the precise terms the District Court had used to limit the argument—"insurance" and "payer"—counsel nonetheless used a "few words that were well placed," *Willing v. Quebedeaux*, 2009 MT 102, ¶ 26, 350 Mont. 119, 204 P.3d 1248, to reach the prohibited topic and make to the jury a reference or inference of other responsible parties. As demonstrated above, Plaintiff's counsel had specifically asked the District Court to be able to argue:  1) "it's not proper for you to consider Miss Salsbery's economic status," and 2) when the jurors "consider the calculation of damages in this case, they should do so simply based on the merits of the case, not based on anything else." In response to these requests, the District Court ruled, "You may say that, but you may not

21

make any reference that would infer to anyone any other payer." However, Plaintiff's counsel did so.

¶34     In my view, the issue here is not the scope of Rule 411. Rather, the issue is ensuring compliance with a district court's ruling and its ability to control the proceeding. Counsel may disagree with a ruling, and certainly has the right to appeal it, but he may not contravene it, which makes this case remarkably similar to *Willing*. There, the district court prohibited defense counsel from making any reference in closing argument to an undisclosed textbook. *Willing*, ¶ 15. Counsel, similar to what occurred here, did not use the district court's precise term "textbook," or make any direct reference to the textbook, but rather referred to testimony regarding a technique described within the textbook, drawing an objection, like here, from opposing counsel. *Willing*, ¶ 16. Despite the indirect language used by defense counsel in what we described as "a brief comment," we nonetheless reversed, reasoning that defense counsel had violated "the court's order prohibiting further references." *Willing*, ¶¶ 26, 28.

¶35     I believe what was wrong in *Willing* is wrong here. And, despite any differences between these cases, the question is whether the District Court manifestly abused its discretion. District courts must be able to control the proceeding, and when counsel circumvents an order, the court should be supported. The District Court provided specific direction, and later found, in its new trial ruling, that Plaintiff's counsel "chose not to comply with this order." It further concluded the comment was "highly prejudicial," because it resulted in the jury hearing that other payers may be engaged in the case. I find

22

it of no moment that the District Court reached this conclusion during post-verdict consideration of the proceeding upon a timely filed motion for new trial.

¶36     I would conclude that the District Court did not manifestly abuse its discretion by granting a new trial, and affirm.

/S/ JIM RICE

Justice Laurie McKinnon joins in the dissenting Opinion of Justice Rice.

/S/ LAURIE McKINNON